**BROTHERHOOD OF RAILWAY CARMEN (DIVISION OF TCU), et al., Plaintiffs,**

v.

**ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Defendant.**

No. CA 3–88–0089–T.

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 25, 1988.

William G. Mahoney, John O'B. Clarke, Jr., Richard S. Edelman, Donald F. Griffin, Highsaw & Mahoney, P.C., Washington, D.C., G. William Baab, Mullinax, Wells, Baab & Cloutman, Dallas, Tex., for plaintiffs.

George P. Parker, Jr., J. Joe Harris, Matthews & Branscomb, San Antonio, Tex., John T. Fleps, Chicago, Ill., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MALONEY, District Judge.

On March 3, 1988, Plaintiffs filed their Motion for Summary Judgment. On April 18, 1988, Defendant filed its Motion for Summary Judgment.

### Background

Plaintiffs are six unions [1] which are the collective bargaining representatives of individuals employed by Defendant Atchison, Topeka & Santa Fe Railway Company. Defendant is an interstate carrier subject to the regulations of the Railway Labor Act, 45 U.S.C. § 151–88 ("the RLA"). Plaintiffs filed this action seeking declaratory and injunctive relief against Defendant. Their complaint arises from Defendant's implementation of a "Voluntary Resignation Program" for certain of its employees, which Plaintiffs allege violated the RLAA. Specifically, Plaintiffs contend that Defendant violated section 2, paragraphs Second, Third, Fourth and Ninth of the RLA, 45 U.S.C. § 152 ¶¶ Second, Third, Fourth and Ninth, by bargaining directly with individual employees over matters which are subject to collective bargaining under the RLA, and violated section 2, paragraph Seventh and section 6 of the RLA, 45 U.S.C. § 152, ¶ Seventh and § 156, by unilaterally changing the rates of pay, rules and working conditions of the affected employees.

---

1. The Plaintiff unions are: Brotherhood of Railway Carmen, International Association of Machinists and Aerospace Workers, International Brotherhood of Boilermakers and Blacksmiths, International Brotherhood of Electrical Workers, Sheet Metal Workers International Association, and International Brotherhood of Firemen and Oilers.

## Facts

Defendant operates a facility in Cleburne, Texas, where it employs individuals to perform repair work on locomotives and rail cars. Plaintiffs are the certified representatives of those employees for purposes of collective bargaining. Plaintiffs and Defendant are parties to various collective bargaining agreements governing the rates of pay, rules and working conditions of its shop employees, including an agreement known as the "1964 Shop Crafts Agreement" ("the Agreement"). The Agreement provides, among other things, protective benefits for employees who are dismissed or suffer a decrease in compensation as a result of certain operational changes.

During the last four months of 1987, Defendant laid off (furloughed) a number of shop craft employees at its Cleburne, Texas facility. On December 21, 1987, Defendant posted a notice at the Cleburne facility, offering certain shop craft employees an opportunity to voluntarily resign in return for a lump sum payment of $20,000. The notice further stated that the number of voluntary resignations would be limited by the company, and that the offer would expire on December 29, 1987. As a condition of its acceptance of the "buy-out" of their employment rights, Defendant required applicant employees to sign a release waiving any and all claims and rights they might have had under applicable collective bargaining agreements as well as any other claims the employees might have had against Defendant.

On that same day and on the following day, certain of Plaintiffs' officials informed Defendant that, in Plaintiffs' opinion, Defendant's Voluntary Resignation Program violated the Railway Labor Act in that it constituted unlawful direct dealing with employees and a unilateral change in the 1964 Shop Crafts Agreement.

Plaintiffs allege that Defendant initiated its "buy out" program in an effort to avoid paying certain protective benefits to employees at the Cleburne facility. It is undisputed that under the Agreement, if certain operational changes occur at a facility and cause employees to be deprived of employment or placed in a worse position with respect to compensation, protective benefits must be paid to those employees who are adversely affected. One of the operational changes which will trigger protective benefits is the transfer of work from one of Defendant's facilities to another, thereby diminishing the amount of work available at the facility where the work was originally performed. Plaintiffs allege that Defendant had been slowly transferring certain work from its Cleburne, Texas facility to its San Bernadino and Topeka facilities. Plaintiffs argue that the reduction in work at the Cleburne facility was due to Defendant's transfer of work and that the employees affected are entitled to protective benefits. Therefore, Plaintiffs contend, Defendant's "buyout" program affected matters which are subject exclusively to collective bargaining.

Defendant contends that the "buyout" of employees was caused by a decline in business at the Cleburne facility which was not caused by a transfer of work, and that employees are therefore not entitled to protective benefits under the Agreement. Defendant further asserts that this factual dispute need not be resolved by this Court because the issues presented in this case are within the exclusive jurisdiction of the National Railway Arbitration Board (NRAB).

Plaintiffs filed this action on January 12, 1988, seeking a declaratory judgment that Defendant's actions constitute unlawful direct dealing with its employees in circumvention of their collective bargaining representatives in violation of the RLA, and that Defendant's actions constitute a unilateral change in the rates of pay, rules and working conditions of its shop employees in violation of the notice, negotiation and status quo requirements of the RLA. Additionally, Plaintiffs seek an order enjoining Defendant from any further direct dealing with any of its shop employees to purchase their resignations.

## Discussion

Plaintiffs' complaint alleges that this Court has jurisdiction over this action pur-

suant to 28 U.S.C. §§ 1331, 1337, 2201, and 2202. Jurisdiction pursuant to those sections is based on alleged violations of the Railway Labor Act, 45 U.S.C. §§ 151–88.

Defendant, on the other hand, contends that this Court does not have jurisdiction over the parties' dispute for two reasons. Plaintiff asserts, and Defendant agrees, that the RLA mandates collective bargaining only with respect to rates of pay, rules, or working conditions. Defendant argues that its Voluntary Resignation Program did not involve any of the foregoing mandatory bargaining subjects and therefore could not have violated the RLA. Defendant further argues that this action does not involve a "major" dispute which would confer jurisdiction on this Court.

This Court finds that it is not necessary to address Defendant's contention that the Voluntary Resignation Program did not involve "rates of pay, rules, or working conditions" which are subject to mandatory arbitration. The issue of whether this Court has jurisdiction over violations of the RLA is resolved on another basis.

Federal courts determine whether they may exercise jurisdiction over labor disputes involving interstate rail carriers by analyzing the nature of the dispute at hand. *Brotherhood of Railway, Airline & Steamship Clerks, Freight Handlers, Express & Station Employees (BRAC) v. Atchison, Topeka and Santa Fe Railway Company*, 847 F.2d 403 (7th Cir.1988). Two separate grounds may confer federal jurisdiction:

> First, federal courts may entertain suits involving major disputes. Major disputes are those that involve formation, rather than interpretation, of collective bargaining agreements. Second, federal courts may exercise jurisdiction over some disputes which involve violations of specific provisions of the RLA.

*BRAC*, 847 F.2d at 405 (citations omitted).[2]

With regard to the issue of jurisdiction based on allegations of violations of specific provisions of the RLA, the court in *BRAC* found that, "The scope of federal courts' jurisdiction over RLA violations is limited to exceptional circumstances requiring judicial intervention." *BRAC*, 847 F.2d at 408. That court also found that federal courts stress that their jurisdiction over RLA violations is quite narrow, and that in disputes in which the RLA's extrajudicial dispute-resolution mechanisms are capable of adequately protecting the rights of the parties, federal courts may not interfere with the statutory process. *BRAC*, 847 F.2d at 409.

After analyzing cases in which courts had found that federal jurisdiction existed, the court in *BRAC* concluded that cases involving "exceptional circumstances requiring judicial intervention" could be roughly divided into two groups: 1) those in which the extrajudicial dispute-resolution framework of the RLA is either unavailable or ineffective; and 2) those which involve actions taken by an employer with specific intent to weaken or destroy a union.

The Court finds that Plaintiffs have not alleged that this action involves exceptional circumstances which would require this Court to exercise jurisdiction over Plaintiffs' claims. In fact, Plaintiffs do not vigorously assert that this Court has jurisdiction over Plaintiffs' claims on the ground that they are based on violations of the RLA, and the Court finds that Plaintiffs do not cite any persuasive authority to that effect. The principal dispute over this Court's jurisdiction appears to center around whether Plaintiffs' claims involve a "major" or "minor" dispute.

The RLA itself does not classify disputes as either "major" or "minor." The Supreme Court articulated those classifications of disputes between parties governed by the RLA to distinguish between disputes governed by section 2 of the RLA and those decided under section 3. *BRAC*, 847 F.2d at 405.

> The first [major disputes] relates to disputes over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the

---

**2.** The facts and arguments made in that case are virtually identical to those in the instant case.

terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to he assertion of rights claimed to have vested in the past.

The second class [minor disputes], however, contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case. In the latter event the claim is founded upon some incident of the employment relation, or asserted one, independent of those covered by the collective agreement.... In either case the claim is to rights accrued, not merely to have new ones created for the future.

*Elgin, Joliet & Eastern Railway v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945). "In essence, a major dispute involves the creation of a contract or a change in the terms of an existing contract, while a minor dispute involves the interpretation or application of an existing contract." *BRAC*, 847 F.2d at 406. Minor disputes, if not settled informally, are subject to the exclusive jurisdiction of the NRAB. *Andrews v. Louisville & Nashville Railroad Company*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972).

While the parties to the instant action appear to agree on the definitions of "major" and "minor" disputes, they do not agree on which of those two classifications describes the dispute in this action. Plaintiffs contend that this dispute is "major" and that this Court has jurisdiction; Defendant contends that the dispute is "minor" and therefore within the exclusive jurisdiction of the NRAB.

To determine if a dispute involves the interpretation or application of an existing contract, the Court must determine whether the actions of the employer were "arguably" permitted by the collective bargaining agreement between the parties.

*See St. Louis Southwestern Railway Company v. United Transportation Union*, 646 F.2d 230 (5th Cir.1981). In so doing, the court does not restrict its analysis solely to the explicit terms of the written documents, but looks also to the established past practices that form the course of dealing between the parties. *BRAC*, 847 F.2d at 406. Past practices, however, will not be admitted to contradict the express provisions of a written contract. Instead, they are admitted when the parties' written agreement is silent regarding the actions which are in dispute. *BRAC*, 847 F.2d at 406, n. 1.

Defendant contends that the Agreement between the parties arguably permits it to engage in Voluntary Resignation Programs in two ways: 1) the Agreement permits employees to voluntarily resign, and 2) the Agreement does not expressly prohibit Defendant's Voluntary Resignation Programs with employees.

Article I, § 3 of the Agreement provides in relevant part:

An employee shall not be regarded as deprived of employment or placed in a worse position with respect to his compensation and rules governing working conditions in case of his resignation....

Defendant argues that by expressly and unconditionally acknowledging the possibility of an employee's resignation and dictating its results in the context of labor protection, the explicit language in the Agreement at least "arguably" permits the solicited resignations which Plaintiffs challenge here.

Defendant also argues that the Agreement does not expressly prohibit Defendant's Voluntary Resignation Program and that it is the past practice of the parties to allow such programs. In support of this contention, Defendant submitted the affidavit of the Assistant to the Vice President—Labor Relations, of Defendant, who avers that Defendant has conspicuously solicited voluntary resignations of craft employees in exchange for lump sum payments. The affiant states that in January, 1984, January 1987, May, 1987, and August, 1987, Defendant implemented volun-

tary resignation programs which were virtually identical to the one at issue here.

 The Court finds that the Agreement does not address voluntary resignation programs of the type initiated by Defendant.[3] It is therefore appropriate for the Court to examine the course of dealing between the parties to determine if any agreement exists between the parties with regard to voluntary resignation programs. *BRAC,* 847 at 406. If the evidence submitted in support of Defendant's motion for summary judgment supports a nonfrivolous claim that the voluntary resignation program was consistent with a mutually understood course of dealing between Plaintiffs and Defendant, the Court must conclude that the dispute is minor and within the exclusive jurisdiction of the NRAB. *BRAC,* 847 F.2d at 408.

In response to Defendant's evidence of past dealing, Plaintiff submits affidavits which attempt to discredit the significance of the former resignation programs which Defendant implemented. While some of the evidence which Plaintiff submits has relevance, the Court finds that it is not sufficient to render frivolous Defendant's allegation of "course of past dealing". The conduct which Defendant offers as evidence of an established past practice between the parties is not so dissimilar to the challenged practice that the Court is prevented from finding that the current practice was a part of the parties' course of dealing. *BRAC,* 847 F.2d at 403.

This Court concludes that Defendant's claim that the voluntary resignation program was consistent with a mutually understood course of dealing between the parties is nonfrivolous. Therefore, the dispute presented in this case is minor and within the exclusive jurisdiction of the Arbitration Board. The Court notes, however, that this conclusion does not address the merits of Defendant's contractual justification claim, and that the question of whether an enforceable contractual obligation exists is solely for the Arbitration Board. *See BRAC,* 847 F.2d at 408.

It is therefore ORDERED that Defendant's motion for summary judgment is granted and that Plaintiff's motion for summary judgment is denied.

---

3. The Court bases this finding on the Synthesis of Agreement submitted as Exhibit 1 to Plaintiffs' Amended Complaint. The parties did not provide the Court with a copy of the original 1964 Shop Crafts Agreement, so the Court must assume that the parties intended for the Court to resolve this dispute by relying on the contents of the Synthesis of Agreement.