**BROTHERHOOD OF RAILWAY CARMEN (DIVISION OF TCU), Et Al., Plaintiffs–Appellants**

v.

**ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Defendant–Appellee.**

No. 88–7012.

United States Court of Appeals, Fifth Circuit.

Feb. 28, 1990.

Richard S. Edelman, William G. Mahoney, Highsaw & Mahoney, Washington, D.C., for plaintiffs-appellants.

George P. Parker, Jr., Matthews & Branscomb, J. Joe Harris, San Antonio, Tex., John J. Fleps, Chicago, Ill., for defendant-appellee.

Before WISDOM, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

WISDOM, Circuit Judge:

Defendant/appellee Santa Fe is an interstate carrier subject to the Railway Labor

Act (RLA).[1]  The plaintiff/appellant unions are the exclusive bargaining representatives of Santa Fe's employees.  The unions allege that a voluntary resignation program offered by Santa Fe to its employees constituted direct dealing in violation of the RLA.  Santa Fe contends that the program was permitted by its collective-bargaining agreements with the unions.  The district court found that this case presents a minor dispute subject to compulsory arbitration under the RLA.  703 F.Supp. 597.  We AFFIRM.

## I

On December 21, 1987, Santa Fe posted a notice to its Cleburne shop employees offering, to a limited number of employees on a first come, first serve basis, an opportunity to terminate their employment in return for $20,000.  Santa Fe required applicants for that "voluntary resignation" or "buyout" program to waive all claims and rights under applicable collective bargaining agreements as well as any other claims against Santa Fe.

During the four months prior to the buyout offer, Santa Fe had furloughed a number of shop craft employees at its Cleburne facility.  Employees were, therefore, concerned about their job security, and many rushed to accept the buyout.  Over two hundred Cleburne employees accepted the buyout offer.

On January 12, 1988, six of Santa Fe's shop craft unions filed suit in federal district court, seeking a declaratory judgment and injunctive relief against the buyout program.  In the one cause of action now pursued on appeal, the unions assert that, in offering the buyout program, Santa Fe violated RLA §§ 2 First, Second, Third, Fourth, and Ninth[2] by dealing directly with Cleburne shop employees rather than negotiating through their designated representatives, the unions.  Santa Fe argues that collective agreements with the unions permitted it to deal directly with individual workers to buy out their employment rights.

On October 26, 1988, the district court entered an order dismissing the unions' complaint for lack of jurisdiction.  That judgment was rendered final by the district court's order of December 5, 1988 denying the plaintiffs' motion to alter or amend that judgment.  The district court found that, since the collective agreements between Santa Fe and the unions arguably permitted Santa Fe's buyout program, the case involved a "minor dispute" subject to compulsory arbitration under the RLA.

On December 12, 1988, the unions filed a Notice of Appeal.  The unions thereafter filed a Motion for Injunction Pending Appeal.  That motion was denied by the district court on December 21, 1988.  A similar motion was denied by this court on January 6, 1989.

This court now AFFIRMS the district court's judgment dismissing the unions' complaint for lack of jurisdiction.

## II

■  A preliminary issue is raised regarding this court's jurisdiction over five of the appellants in this case.  The Notice of Appeal filed by the unions designated "Brotherhood of Railway Carmen (Division of TCU), et al." as the appellants; none of the other five plaintiff unions were specifically named in the notice.  This raises the question whether the "et al." designation in the Notice of Appeal was sufficient under Fed. R.App.P. 3 to perfect an appeal for the five plaintiff unions not specifically named in the notice.

Rule 3(c) requires that a "notice of appeal shall specify the party or parties taking the appeal".  The Supreme Court, in *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, ——, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285, 292 (1988), made clear that an "et al." designation will not suffice to perfect an appeal for unnamed appellants.  The Court explained that,

---

**1.**  45 U.S.C. § 151 et seq.

**2.**  45 U.S.C. §§ 152 First, Second, Third, Fourth, and Ninth.

The purpose of the specificity requirement of Rule 3(c) is to provide notice both to the opposition and to the court of the identity of the appellant or appellants. The use of the phrase "et al.," which literally means "and others," utterly fails to provide such notice to either intended recipient. Permitting such vague designation would leave the appellee and the court unable to determine with certitude whether a losing party not named in the notice of appeal should be bound by an adverse judgment or held liable for costs or sanctions. The specificity requirement of Rule 3(c) is met only by some designation that gives fair notice of the specific individual or entity seeking to appeal.

In the case before us, however, although five of the plaintiff unions were designated only as "et al." in the Notice of Appeal, that defect was cured by the fact that all six plaintiff unions were listed by name as appellants in a Memorandum in Support of Appellants' Motion for Injunction Pending Appeal. That supporting memorandum was filed within thirty days of the district court's judgment dismissing the case. In sum, within the thirty day period in which notice of appeal may be filed, all six unions seeking to appeal were clearly identified to both the appellees and the court. Thus, the required notice was provided within the thirty day period prescribed and the notice purposes of Rule 3(c) were served.

As the Supreme Court observed in *Torres*, "[I]f a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires." *Id.*, 487 U.S. at ——, 108 S.Ct. at 2408, 101 L.Ed.2d at 291. Since the Notice of Appeal along with the Memorandum provided adequate notice within the prescribed period, we hold that the unions' actions constituted the functional equivalent of what Rule 3(c) requires. This court has jurisdiction over the appeal of all six unions.[3]

### III

The unions charge that the buyout program offered to employees by Santa Fe without consultation with the unions constituted direct dealing regarding mandatory bargaining subjects (i.e., rates of pay, rules or working conditions) in violation of the RLA.[4] Santa Fe argues that its buyout program did not constitute direct dealing regarding mandatory subjects. Santa Fe argues, in the alternative, that even if the buyout program would otherwise have constituted an RLA violation the program was permitted by collective agreement between Santa Fe and the unions.[5]

Addressing Santa Fe's first argument, we find that an RLA dispute is presented here. Even if the buyout program did not itself constitute direct dealing

---

**3.** This court has looked to the purpose rather than the letter of Rule 3(c)'s specificity requirement. For example, in *Pope v. Mississippi Real Estate Comm.*, 872 F.2d 127, 129 (5th Cir.1989), this court held that, in an action brought by a husband and wife, a notice of appeal that was styled "James William Pope, et al." and that stated "plaintiffs do hereby appeal" conferred jurisdiction of the wife's appeal because, since there were only two plaintiffs in the case, the designation "et al." could refer only to Mary Pope and the reference to "plaintiffs" could refer only to James and Mary Pope.

**4.** Sec. 2 Seventh of the RLA (45 U.S.C. § 152 Seventh) states that no carrier, "shall change the rates of pay, rules or working conditions of its employees, as a class as embodied in agreements except in the manner prescribed in such agreements or in § 156 of this title."

**5.** The unions argue that, not only did they not contractually permit buyout programs, but they would not even have been authorized to do so because they are not authorized to waive their statutory right against direct dealing, even for specific programs such as a buyout program. The unions' assertion in this regard is contrary to a body of case law that permits unions to waive statutory rights under the RLA. *See, e.g., Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 705–06, 103 S.Ct. 1467, 1475–76, 75 L.Ed.2d 387 (1983) (stating that "[t]his Court has long recognized that a union may waive a member's statutorily protected rights, including 'his right to strike'.... Thus, a union may bargain over its members' economic rights, but it may not surrender rights that impair employees' choice of their bargaining representative").

regarding mandatory subjects (a question we need not decide here), it may have functioned to "undermine collective bargaining rights". According to the 1964 Shopcrafts Agreement between Santa Fe and the unions, employees would be entitled to certain rights and benefits in the event that they were adversely affected by transfers of work. The unions allege that such work transfers were occurring and were adversely affecting employees at the time of the buyout offer. If the unions' allegations are true, then, by offering the buyout program and dealing directly with individual employees regarding acceptance of the buyout offer, Santa Fe effectively circumvented whatever obligations it might have had under the Shopcrafts Agreement by "buying out" employees one at a time.[6]

In *J.I. Case v. NLRB*, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944), the Supreme Court stated that,

> Individual contracts, no matter what the circumstances that justify their execution or what their terms, may not be availed of to ... limit or condition the terms of the collective agreement....
>
> We know of nothing to prevent the employee's, because he is an employee, making any contract provided it is not inconsistent with a collective agreement.... But in so doing the employer may not incidentally exact or obtain any diminution of his own obligation ... in the matters covered by collective agreement.

321 U.S. at 337, 339, 64 S.Ct. at 580, 581.[7]

Those principles stated in *J.I. Case* are equally applicable in cases brought under the RLA. As the Supreme Court stated in *Order of R. Telegraphers v. Railway Exp. Agency*, "[t]he decision in *J.I. Case Co. v. National Labor Relation Bd.* ... considers more generally the relation of individual contracts to collective bargaining, and

much that is said in that opinion is applicable [in cases brought under the RLA]." 321 U.S. 342, 347, 64 S.Ct. 582, 585, 88 L.Ed. 788 (1944).

The buyout program, about which Santa Fe dealt directly with employees, may have functioned to undermine the collectively-bargained Shopcrafts Agreement and to reduce Santa Fe's obligations under that agreement. As such, the buyout program may have violated the RLA regardless of whether it constituted direct dealing regarding mandatory subjects (a question we do not pass on here). The unions, therefore, have stated a dispute cognizable under the RLA.

## IV

■ The RLA provides two distinct procedures to promote the resolution of labor disputes. If there is a "major dispute", then, before resorting to self-help, the parties are required to submit to conference and, if necessary, mediation. 45 U.S.C. §§ 152, 154–56. Where the dispute is classified as "minor", if not settled informally, it is subject exclusively to resolution through arbitration. 45 U.S.C. sec. 153. *See, e.g., Andrews v. Louisville & N.R.R.*, 406 U.S. 320, 322, 92 S.Ct. 1562, 1564, 32 L.Ed.2d 95 (1972).

The Supreme Court first articulated the distinction between minor and major disputes in *Elgin, Joliet & Eastern R. Co. v. Burley*, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). That distinction recently was developed by the Supreme Court in *Consolidated Rail v. Labor Executives*, 491 U.S. ——, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989). Drawing on *Burley* and its progeny, the Court in *Consolidated* explained that,

> [T]he major dispute category ... "relates to disputes over the formation of collec-

---

**6.** Santa Fe denies that transfers of work by which it would have incurred obligations under the Shopcrafts Agreement were occurring at the time in question. We do not decide here whether work transfers were occurring. We do note, however, that the very existence of controversy on that question would have gone far to induce employees not to attempt to collect work-transfer benefits under the Agreement but, rather, to

accept the $20,000 cash offered in the buyout offer.

**7.** That an individual contract may benefit an individual employee does not alter or detract from the meaning of the Court's statement in *J.I. Case*, 321 U.S. at 337, 339, 64 S.Ct. at 580, 581.

tive agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy...." *Burley*, 325 U.S. at 723, 65 S.Ct. at 1290.

In contrast, the minor dispute category [relates to] dispute[s] arising or growing "out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules or working conditions." This second category of disputes "contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one...." *Burley*, 325 U.S. at 723, 65 S.Ct. at 1290.

A minor dispute in the railroad industry is subject to compulsory and binding arbitration before the National Railroad Adjustment Board, § 3, or before an adjustment board established by the employer and the unions representing the employees. § 3 Second. The Board ... has exclusive jurisdiction over minor disputes....

*Consolidated*, 491 U.S. at ——, 109 S.Ct. at 2480–82, 105 L.Ed. at 261–63 (some citations omitted).

The unions in the present case argue that the dispute presented here is neither a major nor a minor dispute but, rather, a direct statutory violation of the RLA's prohibition against direct dealing. But Santa Fe contends that the buyout program was permitted under its collective agreements with the unions. If Santa Fe's contention is correct, then there has been no violation of the RLA. Resolution of this dispute turns on interpretation of the contractual agreements between the parties. The case, therefore, involves a minor dispute.

The unions argue that permitting Santa Fe to render this case a minor dispute simply by stating a contractual defense inappropriately allows the defendant to define the status of the dispute. The Supreme Court has acknowledged that deter-

mination of whether a dispute is major or minor is, to some extent, "a matter of pleading".[8] To safeguard against abuse of the parties' power to define the status of the dispute, the Court has prescribed an "arguable basis" test by which parties' contract-based claims must be measured. As the Court explained in *Consolidated*,

The party who initiates a dispute takes the first step towards categorizing the dispute when it chooses whether to assert an existing contractual right to take or to resist the action in question. But the Courts of Appeals early recognized that there is a danger in leaving the characterization of the dispute solely in the hands of one party....

To satisfy th[e] need for some degree of judicial control, the Courts of Appeals uniformly have established some variant of the standard employed by the Third Circuit in this case:

"[I]f the disputed action of one of the parties can 'arguably' be justified by the existing agreement or, in somewhat different statement, if the contention that the labor contract sanctions the disputed action is not 'obviously insubstantial', the controversy is a [minor dispute] within the exclusive province of the National Railroad Adjustment Board." ...

Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement. Where, in contrast, the employer's claims are frivolous or obviously insubstantial, the dispute is major.

*Consolidated*, 491 U.S. at ——, 109 S.Ct. at 2482, 105 L.Ed.2d at 263–64 (citations omitted, footnotes omitted). If Santa Fe's contention that the buyout program was permitted under the collective agreements is "arguably justified", then this case presents a minor dispute.

The unions, however, suggest that, where an alleged contractual provision involves waiver of a statutory right under the RLA (such as unions' right to be free

---

**8.** *Consolidated*, 491 U.S. at ——, 109 S.Ct. at 2482, 105 L.Ed.2d at 263.

from direct dealing by employers), a heightened level of scrutiny, exceeding the "arguable basis" test, should be employed in determining whether a dispute should be considered minor. Addressing a similar suggestion, the Court in *Consolidated* stated that,

> The effect of a selectively heightened level of scrutiny (a "clear and patent" rather than an "arguably justified" standard) would be to limit the enforceability of [contract terms that grant management the power to respond flexibly to changing circumstances].... To accept the bifurcated standard the Union advocates would, in effect, be impermissibly to "pass upon the desirability of the substantive terms of labor agreements," by affording flexible terms a less favored status....
>
> We hold that if an employer asserts a claim that the parties' agreement gives the employer the discretion to make a particular change in working conditions without prior negotiation, and if that claim is arguably justified by the terms of the parties' agreement ..., the employer may make the change and courts

must defer to the arbitral jurisdiction of the Board.[9]

*Consolidated,* 491 U.S. at —, 109 S.Ct. at 2483–84, 105 L.Ed.2d at 265–66 (citation omitted).

Applying the principles articulated in *Consolidated,* this case presents a minor dispute.[10] Santa Fe has at least an arguable basis for its contention that its collective agreements with the unions permit the challenged buyout program. Santa Fe's contractual argument rests on both express and implied terms of the collective agreements. As the District Court in this case acknowledged, and as the Supreme Court in *Consolidated* stated, "collectively-bargained agreements may include implied as well as express terms. Furthermore, it is well established that the parties' 'practice, usage and custom' is of significance in interpreting their agreement". *Consolidated,* 491 U.S. at —, 109 S.Ct. at 2485, 105 L.Ed.2d at 267 (citations omitted).

We agree with the district court that, although Santa Fe's claims relying on the express terms of the Shopcrafts Agree-

---

**9.** The appellants cite *Metropolitan Edison,* 460 U.S. 693, 103 S.Ct. 1467, in support of their argument that a "clear and explicit waiver" rather than an "arguable basis" test should be applied in this case. But *Metropolitan Edison's* "clear and explicit waiver" test is the test for determining actual substantive contractual questions (under the National Labor Relations Act). It is *not* the test for determining the preliminary question of what body has jurisdiction to address the underlying contractual dispute (under the RLA). *Id.* at 708–09, 103 S.Ct. at 1477–78. The appellants' reliance on *Metropolitan Edison* is misplaced. This court recently said as much when it stated that,

> we find it to be a debatable matter of law whether, or to what extent, the rule of construction requiring that a waiver of bargaining rights under the NLRA be clear and unmistakable applies in a case arising under the RLA....
>
> Even assuming ... that ... a clear and unmistakable waiver [is required under the RLA], the construction proposed by [the carrier] satisfies the minimal burden of arguably being a clear and unmistakable waiver.... We decide ... that the arbitration board is the forum authorized to construe the clause.

*International B'hd. of Teamsters v. Southwest Airlines,* 875 F.2d 1129, 1136 (5th Cir.1989) (en banc) (emphasis added).

**10.** The instant case does not present either of the two types of special circumstances in which federal courts may assert jurisdiction over cases that would otherwise involve minor disputes subject to compulsory arbitration under the RLA. The first such type of special circumstance involves cases in which the extrajudicial dispute-resolution framework of the RLA is either ineffective, *see, e.g., Conrad v. Delta Air Lines, Inc.,* 494 F.2d 914, 917 (1974), or unavailable, *see, e.g., Burke v. Compania Mexicana de Aviacion, S.A.,* 433 F.2d 1031 (1970). *See also, Switchmen's Union of North America v. National Mediation Bd.,* 320 U.S. 297, 300, 64 S.Ct. 95, 96–97, 88 L.Ed. 61 (1943) (stating that, "[i]f the absence of jurisdiction of the federal courts meant a sacrifice or obliteration of a rights which Congress had created, the inference would be strong that Congress intended the statutory provisions governing the general jurisdiction of those courts to control").

The second type of exceptional circumstance involves actions taken by a carrier for the purpose of weakening or destroying a union. *See, e.g., Central of Ga. Ry.,* 305 F.2d 605, 608–09 (1962). *See generally, Brotherhood of Ry., etc. v. Atchison, Topeka & Santa Fe,* 847 F.2d 403, 411 (7th Cir.1988). Neither type of exceptional circumstance exists in the present dispute.

ment are insubstantial[11], the claims based on implied terms—specifically, the past practices of the parties including previous resignation offerings[12] and individually-negotiated resignation agreements—do have some arguable basis sufficient to render this a minor dispute.

## V

We find this case to involve a minor dispute subject to compulsory arbitration before the National Railroad Adjustment Board or before an adjustment board established by Santa Fe and the unions. We AFFIRM the district court's opinion dismissing this case for lack of jurisdiction.

11.  Santa Fe argues that the express terms of the Shopcrafts Agreement permit the buyout program because the Agreement states that an employee is not entitled to the Agreement's protective benefits in the event of the employee's resignation. That the Agreement recognizes the right of an individual employee to resign and denies protective benefits upon resignation does not mean that the Agreement permits Santa Fe to deal directly with employees to solicit and define the terms of their resignations.

12.  Previous "voluntary resignation" offerings allegedly were made by Santa Fe in January, 1984 and in January, May and August of 1987.