Judy M. PORTER, et al., Plaintiffs,

v.

The ATCHISON, TOPEKA and SANTA FE RAILWAY COMPANY, et al., Defendants.

Civ. A. No. 4–90–416–A.

United States District Court, N.D. Texas, Fort Worth Division.

March 19, 1991.

Gregory James Schroedter, Charles Gregory Albert, Bell Boyd & Lloyd, Chicago, Ill., Roger J. Thomas, Jeffrey George Shorba, Patricia N. Harris, Bell Boyd & Lloyd, Washington, D.C., and Dennis Dean Gibson, Bell Boyd & Lloyd, Dallas, Tex., for plaintiffs.

Donald Edward Herrmann, Kelly Hart & Hallman, Fort Worth, Tex., George P. Parker, Jr., Matthews & Branscomb, San Antonio, Tex., and Mark A. Casciari and J. Stephen Poor, Seyfarth Shaw Fairweather & Geraldson, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

McBRYDE, District Judge.

Came on to be considered the motion of defendant, The Atchison, Topeka and Santa Fe Railway Company ("Santa Fe"),[1] to dismiss or, in the alternative, for summary judgment. Having considered the motion and all matters proper to be considered in connection therewith, including, with consent of the parties, evidence received and admissions made at the hearing on class certification held on March 7, 1991, the court has concluded that plaintiffs' claims should be dismissed for lack of subject matter jurisdiction.[2]

### Background

On June 5, 1990, thirty-four named plaintiffs, "for and in behalf of themselves and all others similarly situated," filed this action against Santa Fe. Santa Fe is an interstate carrier subject to the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("RLA").

---

1. The pleadings name as a party "1964 Shop Craft [sic] Agreement." Inasmuch as the "1964 Shop Crafts Agreement" is not a legal entity, the court is not treating it as a party.

2. *See* Fed.R.Civ.P. 12(h)(3).

At all times relevant to this action, Santa Fe and labor unions that represent shop craft and laborer employees of Santa Fe, including plaintiffs when they were in the employ of Santa Fe, have been parties to a multi-employer, multi-union collective bargaining agreement known as the "1964 Shop Crafts Agreement" ("Agreement"). The Agreement provides, *inter alia*, for protective benefits for Santa Fe employees. Plaintiffs allege that the protective benefits part of the Agreement is subject to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*

Plaintiffs, as former employees of Santa Fe, claim that since at least June 5, 1986, they were displaced and deprived of employment in violation of the Agreement. Complaint, ¶¶ 14–24. Plaintiffs further contend that, as a result of an alleged scheme[3] by Santa Fe to interfere with and deprive its employees of their rights to protective benefits granted by the Agreement, they have been deprived of benefits to which they are entitled under the Agreement. *Id.* Plaintiffs assert three theories. First, plaintiffs contend that they "have not been granted the protective benefits to which they are entitled under the Agreement and seek to recover those benefits under the authority of § 502 of ERISA, 29 U.S.C. § 1132." *Id.* at ¶¶ 28–30. Second, plaintiffs claim that "Santa Fe has breached its fiduciary duties" owed to them under § 404 of ERISA, 29 U.S.C. § 1104. *Id.* at ¶¶ 31–32. Third, plaintiffs maintain that "Santa Fe has unlawfully interfered with the protected right of the named plaintiffs and the class they seek to represent to attain the protective benefits to which they are entitled under the Agreement," in viola-

tion of § 510 of ERISA, 29 U.S.C. § 1140. *Id.* at ¶¶ 33–35. Though couched differently from each other, each of the theories is disclosed by the entire text of the pleading and the record of this action to be nothing other than a complaint that Santa Fe breached the protective benefits section of the Agreement.

In ruling on a motion to dismiss for lack of subject matter jurisdiction, the allegations of the complaint should be construed favorably to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). However, the court is not limited to a consideration of the allegations of the complaint in deciding whether subject matter jurisdiction exists. *See Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.1981).

Because of the dismissal, the court is ordering the class certification issues that were considered at the March 7, 1991, hearing are not reached for resolution.

### *The Railway Labor Act*

The provisions of the RLA control the disposition the court is making of this action. Mandatory procedures for the resolution of labor disputes within its coverage are established by the RLA. *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 303–04, 109 S.Ct. 2477, 2479–81, 105 L.Ed.2d 250 (1989); *Bonin v. American Airlines, Inc.,* 621 F.2d 635, 637 (5th Cir.1980). As the Fifth Circuit explained in *Bonin,* those labor disputes are of two kinds, delineated by the Supreme Court as "major" and "minor"[4]:

> A major dispute concerns the formation of a collective bargaining agreement or

**3.** By way of the complaint, plaintiffs claim that such scheme was first implemented by transferring work gradually from Cleburne, the location of the named plaintiffs' employment, to other facilities under the pretext that there was a lack of work for the Cleburne facility. Complaint, ¶ 16. Plaintiffs further claim that Santa Fe abolished certain job classifications and either terminated or furloughed workers in those job classifications. *Id.* Another aspect of this alleged scheme was the implementation by Santa Fe of the so called "Voluntary Resignation Program," the same program that was in dispute in *Brotherhood of Ry. Carmen v. Atchison, Topeka*

*& Santa Fe Ry. Company,* 703 F.Supp. 597, 601 (N.D.Tex.1988), *aff'd,* 894 F.2d 1463 (5th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 131, 112 L.Ed.2d 99 (1990). *Id.* at ¶¶ 20–21.

**4.** Major disputes are predicated on §§ 5 and 6, 45 U.S.C. §§ 155 and 156, of the RLA; and, minor disputes are predicated on § 2 Sixth, 45 U.S.C. § 152 Sixth, and § 3 First (i), 45 U.S.C. § 153 First (i), of the RLA. *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 302–03, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989).

the substantial alteration or amendment of an already existing collective bargaining agreement. A minor dispute, on the other hand, involves the interpretation of an existing labor management contract. *Bonin,* 621 F.2d at 637. A minor dispute is subject to compulsory and binding arbitration[5] before the National Railroad Adjustment Board,[6] or before an adjustment board[7] established by the employer and the unions representing the employees. *Consolidated Rail,* 491 U.S. at 303–04, 109 S.Ct. at 2479–81; *Bonin,* 621 F.2d at 637. Pursuant to § 3 Second of the RLA, Article VI § 1 of the Agreement established a "Shop Craft Board of Adjustment," known as "Special Board of Adjustment No. 570," and provides that the board "shall have exclusive authority to resolve disputes arising under the terms of Articles I ... of the Agreement." Motion to Dismiss, ¶ 11. Such boards have "exclusive primary jurisdiction." *Pennsylvania R.R. v. Day,* 360 U.S. 548, 552, 79 S.Ct. 1322, 1324–25, 3 L.Ed.2d 1422 (1959).[8]

Notwithstanding ERISA's express provision providing access to federal courts,[9] ERISA was not intended to, nor did it, preempt the mandatory arbitration provisions of the RLA. *Bonin,* 621 F.2d at 638

(citing *Air Line Pilots Ass'n v. Northwest Airlines, Inc.,* 444 F.Supp. 1138, 1141 (D.D.C.1978), *aff'd in part, rev'd in part,* 627 F.2d 272 (D.C.Cir.1980)); *Beard v. Carrollton R.R.,* 893 F.2d 117, 123 (6th Cir. 1989); *Air Line Pilots Ass'n v. Northwest Airlines, Inc.,* 627 F.2d 272, 275–76 (D.C.Cir.1980); *De La Rosa Sanchez v. Eastern Airlines, Inc.,* 574 F.2d 29, 33 (1st Cir.1978). This conclusion is corroborated by the express language of ERISA stating that "[n]othing in this chapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States...." 29 U.S.C. § 1144(d).[10] Among the laws in effect at the time of the previously mentioned ERISA enactment was the RLA. ERISA claims that turn on the availability of benefits under the collective bargaining agreement are claims that fall within the exclusive jurisdiction created pursuant to the RLA. *Beard,* 893 F.2d at 123; *accord Bonin,* 621 F.2d at 639.

In the instant case, the merit of all of plaintiffs' claims depends on the interpretation of the Agreement. Plaintiffs' entitlement, *vel non,* to protective benefits under the Agreement is determined by the provisions of Article I, §§ 2 and 3.[11] This deter-

---

**5.** *See Brotherhood of Locomotive Engineers v. Louisville & Nashville R.R. Co.,* 373 U.S. 33, 38, 83 S.Ct. 1059, 1062, 10 L.Ed.2d 172 (1963) (holding that the statutory grievance procedure of the RLA is a "mandatory, exclusive, and comprehensive system for resolving grievance disputes").

**6.** *See* 45 U.S.C. § 153 First.

**7.** *See* 45 U.S.C. § 153 Second.

**8.** *See also Consolidated Rail,* 491 U.S. at 307, 109 S.Ct. at 2483 (discussing the "relatively light burden" a railroad bears in establishing exclusive arbitral jurisdiction).

**9.** *See* 29 U.S.C. § 1001(b).

**10.** Excepted ERISA sections which have no relevance to this case are cited in 29 U.S.C. § 1144(d).

**11.** Article I § 2 of the Agreement creates an entitlement to protective benefits for employees who are deprived of employment or placed in a worse position with respect to compensation and rules governing working conditions as a

result of any of the following operational changes:
  (a) Transfer of work;
  (b) Abandonment, discontinuance for six months or more, or consolidation of facilities or services or portions thereof;
  (c) Contracting out of work;
  (d) Lease or purchase of equipment or component parts thereof, the installation, operation, servicing or repairing of which is to be performed by the lessor or seller;
  (e) Voluntary or involuntary discontinuance of contracts;
  (f) Technological changes; and
  (g) Trade-in or repurchase of equipment or unit exchange.
Article I § 3 provides in relevant part:
  An employee shall not be regarded as deprived of employment or placed in a worse position with respect to his compensation and rules governing working conditions in case of his resignation, death, retirement, dismissal for cause in accordance with existing agreements, or failure to obtain a position available to him in the exercise of his seniority rights in accordance with existing rules or agreements, or reductions in forces due to seasonal requirements, the layoff of temporary employees or a decline in a carrier's business, or for

mination involves a "minor dispute" and, therefore, the resolution is within the exclusive primary jurisdiction of the boards established under the RLA. The outcome of the entire case of plaintiffs turns on this determination.

### Exhaustion of Administrative Remedies Under ERISA

■ If the court were to assume, *arguendo*, that plaintiffs' claims are not subject to the mandatory arbitration requirement of the RLA, the court would, nevertheless, choose not to exercise subject matter jurisdiction because of plaintiffs' failure to exhaust their administrative remedies. Although the text of ERISA does not expressly mention the exhaustion doctrine, it is well-established that federal courts have the authority to require exhaustion of remedies in suits arising under ERISA.[12] *See Simmons v. Willcox*, 911 F.2d 1077, 1081 (5th Cir.1990); *Meza v. General Battery Corp.*, 908 F.2d 1262, 1279 (5th Cir.1990); *Denton v. First National Bank of Waco, Texas*, 765 F.2d 1295, 1301 (5th Cir.1985); *Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1226–27 (11th Cir.1985), *cert. denied*, 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986); *Kross v. Western Elec. Co.*, 701 F.2d 1238, 1244, 1246 (7th Cir. 1983); *Amato v. Bernard*, 618 F.2d 559, 566–68 (9th Cir.1980). Indeed, sound federal policy requires the application of the exhaustion requirement as to ERISA claims. *Mason*, 763 F.2d at 1227; *Amato*, 618 F.2d at 567. The decision as to whether to require a claimant to exhaust administrative remedies prior to bringing suit is a matter within the trial court's discretion. *Kross*, 701 F.2d at 1244. As stated by the Fifth Circuit:

> The primary purposes of the exhaustion requirement are to: (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal

courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*.

*Denton*, 765 F.2d at 1300.

ERISA itself requires covered benefit plans to provide administrative remedies for individuals whose claims for benefits have been denied. *See* § 503 of ERISA, 29 U.S.C. § 1133. In the instant case, Article VI of the Agreement establishes a grievance and arbitration procedure for handling disputes that arise under Article I—Employee Protection. Furthermore, under Article VI § 9 of the Agreement, if a claim or grievance is denied, an employee or the union, on behalf of the employee, may appeal the denial to the Shop Craft Special Board of Adjustment. Motion to Dismiss, ¶¶ 13–14. In the case *sub judice*, it is undisputed that several of the named plaintiffs have grievances currently pending. Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Brief in Opposition"), pp. 11–12. Furthermore, over half of the named plaintiffs have yet to file grievances. *Id.* The administrative remedies remain available to all of the plaintiffs.

### The Futility Exception

■ Plaintiffs attempt to invoke a futility exception both to the exhaustion requirement of ERISA[13] and to the mandatory arbitration requirement of the RLA.[14] Brief in Opposition, pp. 10–11. This futility argument is based on plaintiffs' claims that grievances filed on their behalf were rejected by the unions, that the unions told them not "to make waves," and that union officials did not return plaintiffs' letters and phone calls about grievances. *Id.* at 11. Plaintiffs further maintain that exhaustion as to the ERISA claims should not be re-

any other reason not covered by Section 2 thereof. . . .

**12.** *See Amato v. Bernard*, 618 F.2d 559, 566–67 (9th Cir.1980) (discussing, based on the legislative history of ERISA, that Congress intended to grant authority to the courts to apply the exhaustion doctrine to suits arising under ERISA).

**13.** *See Denton*, 765 F.2d at 1302–03.

**14.** *See Glover v. St. Louis–San Francisco Ry. Co.*, 393 U.S. 324, 330, 89 S.Ct. 548, 551–52, 21 L.Ed.2d 519 (1969) (recognizing a futility exception to the exhaustion requirement when the effort to proceed with administrative remedies would be "wholly futile").

quired because they have been denied meaningful access to effective administrative remedies under the Agreement. *Id.* at 10–11. These arguments fail primarily for two reasons. First, plaintiffs have failed to show that the requirement of exhausting their remedies under either ERISA or the RLA would be "wholly futile" inasmuch as each plaintiff has the right to pursue his or her claim independently of the union.[15] *See Elgin, Joliet & Eastern Ry. Co. v. Burley,* 325 U.S. 711, 740 n. 39, 65 S.Ct. 1282, 1297–98 n. 39, 89 L.Ed. 1886 (1945); *Rader v. United Transportation Union,* 718 F.2d 1012, 1014 (11th Cir.1983). Second, because as there are no time limits for individual claimants or their unions to file grievances under the Agreement,[16] plaintiffs have failed to show how they have been prejudiced by the failure of their unions to cooperate in filing their grievances or the failure to receive a summary plan description. *See Meza,* 908 F.2d at 1279;[17] *Kaschak v. Consolidated Rail Corp.,* 707 F.2d 902, 907–08 (6th Cir.1983).

Plaintiffs also contend that the grievance process is inadequate under ERISA because the procedure "unduly inhibits or hampers the initiation or processing of plan claims."[18] Brief in Opposition, pp. 10–11. Plaintiffs claim that the procedure is unreasonable due to the fact that it takes too long for a claim to make it through the administrative process. In so arguing, plaintiffs point to a single claim that took three years to be processed. *Id.* at 17. Plaintiffs' argument, however, fails inasmuch as there has been no showing that the delay has been the product of improper handling of the resolution process.

Finally, plaintiffs have claimed that, even if exhaustion is required by the court, Santa Fe's motion to dismiss should be denied because further discovery on the issue of futility is necessary in order to determine whether subject matter jurisdiction exists. The court has determined that plaintiffs have had sufficient opportunity to conduct discovery on this issue. *Cf. Williamson v. Tucker,* 645 F.2d 404, 414 (5th Cir.1981). Furthermore, at the hearing for class certification, plaintiffs' counsel acknowledged that all discovery requests on the grievances issue had been provided by Santa Fe.

## ORDER

Based on well-established federal policy, and supporting case law, the court has concluded that it lacks subject matter jurisdiction over all claims asserted by plaintiffs in the above-numbered action inasmuch as plaintiffs' claims involve minor disputes subject to the exclusive arbitral jurisdiction under the RLA. Furthermore, even if plaintiffs' claims were not subject to the mandatory arbitration requirement of the RLA, the court would decline to exercise jurisdiction because of the failure of plaintiffs to exhaust their administrative remedies, as ERISA contemplates will be done.

The court, therefore, ORDERS that all of plaintiffs' claims and causes of action be, and are hereby, dismissed without prejudice.

**15.** It is undisputed that three grievances currently pending were filed by individual claimants. *See* Motion to Dismiss, ¶ 25.

**16.** *See* Motion to Dismiss, ¶ 14.

**17.** In *Meza,* the Fifth Circuit pointed out that although ERISA's disclosure provisions clearly indicate a concern on the part of Congress that individual employees be informed of the administrative procedures for obtaining pension bene-

fits, it does not follow that Congress intended to excuse individual claimants from exhausting their administrative remedies in those cases where they were never informed of the applicable administrative procedures. *Meza v. General Battery Corp.,* 908 F.2d 1262, 1279 (5th Cir. 1990).

**18.** *See* 29 C.F.R. § 2560.503–1.