**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, et al., Appellants,**

v.

**NORTHWEST AIRLINES, INC.**

**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, et al.,**

v.

**NORTHWEST AIRLINES, INC., Appellant.**

Nos. 78–1285, 78–1383.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 26, 1979.

Decided Feb. 20, 1980.

Michael E. Abram with whom Donald J. Capuano and Sally Armstrong, Washington, D. C., were on brief, for Air Line Pilots Association et al., appellants in No. 78–1285 and cross-appellees in No. 78–1383.

Jay Kelly Wright, Washington, D. C., with whom Philip A. Lacovara and Julie K. Spiegel, Washington, D. C., were on brief, for Northwest Airlines, Inc. in No. 78–1285 and cross-appellants in No. 78–1383.

Before ROBINSON and ROBB, Circuit Judges, and DAVIS *, Judge, United States Court of Claims.

Opinion for the Court filed by Judge DAVIS.

* Sitting by designation pursuant to 28 U.S.C. § 293(a) (1976).

DAVIS, Judge:

Air Line Pilots Association (ALPA) and Northwest Airlines (Northwest) have had for some time a collectively bargained pension plan for the latter's pilots. This suit by ALPA, the pilots' bargaining agent,[1] brought in the District Court for declaratory and monetary relief, asserts that in 1975 Northwest violated certain parts of the pension plan, as well as provisions of the Employees Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq. (ERISA). Northwest moved to dismiss for lack of subject matter jurisdiction, claiming that under the Railway Labor Act, 45 U.S.C. §§ 151, et seq., the whole dispute had to be submitted to arbitration because it concerned the interpretation and application of a collective bargaining agreement, and that the compulsory arbitration requirements of that Act took precedence over the section of ERISA opening the district courts to pension suits. The District Court agreed, dismissing the suit, but refused to award attorneys' fees to Northwest. *Air Line Pilots Ass'n, Int'l v. Northwest Airlines, Inc.*, 444 F.Supp. 1138, 1142–43 (D.D.C.1978). ALPA appeals from the order of dismissal (No. 78–1285), while Northwest cross-appeals from the denial of attorneys' fees (No. 78–1383). We affirm the dismissal so far as this action relates to the application and interpretation of the pension plan, but reverse it to the extent the complaint alleges violations of ERISA which are independent of the coverage and meaning of the pension plan. On attorneys' fees we vacate the District Court's order so that the matter of fees can be considered at the end of the litigation.

## I.

For over two decades Northwest had had a collectively bargained pension arrange-ment with and for its pilots (represented by ALPA). For a substantial period prior to August 7, 1975, that plan consisted of two separate funds: Trust Fund "A" (to which Northwest alone contributed), which provided fixed retirement benefits; and Trust Fund "B", providing variable benefits to reflect appreciation and market values of fund assets, to which Northwest contributed but individual pilots could also make voluntary contributions. On retirement a pilot obtained benefits from both Trust Funds.

As of August 7, 1975, this pension plan was restructured by agreement to replace the two funds with a single one (combining the assets of the two prior funds), to which the employer would alone contribute for the future and which would offer only fixed benefits. As a transition measure, active-service pilots who had contributed to Trust Fund "B" were allowed either to have distributed to them the value of their contributions or to leave with the plan's new trustee the assets attributable to their prior contributions for distribution on retirement as though the 1975 amendment had not taken effect.

This proceeding is concerned with the pilots who elected in 1975 the "cash out" option. Under the agreement of August 7, 1975, they were to receive the value of their Trust Fund "B" contribution, as of August 7th, "as soon as is administratively feasible after the adoption of this plan." Actual distribution began in November 1975 and apparently continued into December 1975. ALPA's demand in this litigation is that these pilots should also receive interest on the accrued value of their contributions for the period between August 7, 1975, and the actual date of disbursement.[2] Jurisdiction

---

1. Also plaintiffs were ten individual pilots, members of ALPA. For convenience we shall refer only to ALPA. Northwest has filed a motion to dismiss the appeal as to the individual plaintiffs on the ground that the notice of appeal did not designate them as appellants. We deny the motion because it seems clear that the appeal was taken on behalf of all the plaintiffs in the court below.

2. ALPA also asks as damages any profits Northwest may have made through use of such interest, punitive damages, and a declaration of rights.

of the district court is laid under section 502 of ERISA, 29 U.S.C. § 1132.[3]

## II.

All agree that at least part of this suit seeks to enforce ALPA's understanding of the August 1975 amendments to the collectively bargained pension plan. As to that segment, ALPA's position is that the provisions of the Railway Labor Act calling for compulsory arbitration of disputes over collective bargaining agreements have been superseded for pension matters by the ERISA provision making the federal courts available to decide pension disputes, including those arising under such bargaining agreements. Northwest's stance, to the contrary, is that the compulsory arbitration requirement of the Railway Labor Act still stands unimpaired for controversies arising from the Northwest-ALPA pension agreement.

■ A. ERISA aside, it is undisputed and indisputable that the Railway Labor Act, which has been extended in this respect to the airline industry (*International Ass'n of Machinists v. Central Airlines, Inc.*, 372 U.S. 682, 685–86, 83 S.Ct. 956, 959, 10 L.Ed.2d 67 (1963)), requires the contractual controversy between ALPA and Northwest to be submitted to an arbitration board. Under the Act, air carriers and their employees are obliged to bargain collectively over "rates of pay, rules, or working conditions"—terms which include employee pensions. *See Jackson v. Trans World Airlines, Inc.*, 457 F.2d 202, 204 (2d Cir. 1972). The statute also mandates the carrier or the union to refer disputes over the application or interpretation of bargaining agreements covering these matters, if they cannot be resolved informally, to arbitration. See

§ 204 of the Act, 45 U.S.C. § 184. This is a compulsory statutory obligation. *Walker v. Southern Ry.*, 385 U.S. 196, 198, 87 S.Ct. 365, 366, 17 L.Ed.2d 294 (1966); *International Ass'n of Machinists v. Central Airlines, Inc., supra*, 372 U.S. at 686, 83 S.Ct. at 956; *Brotherhood of Railroad Trainmen v. Chicago River & Ind. R. R.*, 353 U.S. 30, 39, 77 S.Ct. 635, 639, 1 L.Ed.2d 622 (1957). The arbitral board's jurisdiction is exclusive and cannot be avoided by efforts to bring the dispute directly into court. *See Slocum v. Delaware, L. & W. R. R.*, 339 U.S. 239, 244, 70 S.Ct. 577, 579, 94 L.Ed. 795 (1950); *Pennsylvania R. R. v. Day*, 360 U.S. 548, 552, 79 S.Ct. 1322, 1324, 3 L.Ed.2d 1422 (1959); *Andrews v. Louisville & N. R. R.*, 406 U.S. 320, 325, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972); *Haney v. Chesapeake & O. R. R.*, 162 U.S.App.D.C. 254, 259, 498 F.2d 987, 992 (1974); *de la Rosa Sanchez v. Eastern Airlines, Inc.*, 574 F.2d 29, 31–33 (1st Cir. 1978).

■ B. Were it not for one provision of ERISA, it might be troubling to decide whether or not the later enactment of ERISA, with its opening of the federal courts to suits over the coverage and application of pension plans (section 502, 29 U.S.C. § 1132), modified the exclusivity of this pattern of the Railway Labor Act.[4] But we think that Congress made its will very clear in section 514(d) of ERISA, 29 U.S.C. § 1144(d), which declares:

> Nothing in this title [subchapter] shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law.[5]

---

3. Section 502(a) permits a participant or a beneficiary of a pension plan to sue, and section (e)(1) gives the district courts jurisdiction of such suits.

4. In the absence of a direct indication of Congressional intention, the courts have balanced and taken account, in comparable situations, of various factors. *Cf. Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 250, 90 S.Ct. 1583, 1592, 26 L.Ed.2d 199 (1970); *U. S. Bulk*

*Carriers, Inc. v. Arguelles*, 400 U.S. 351, 357–58, 91 S.Ct. 409, 412–13, 27 L.Ed.2d 456 (1971); *Buffalo Forge Co. v. United Steelworkers of America*, 428 U.S. 397, 410–12, 96 S.Ct. 3141, 3149–50, 49 L.Ed.2d 1022 (1976); *Leone v. Mobile Oil Corp.*, 173 U.S.App.D.C. 204, 209–10, 523 F.2d 1153, 1158–59 (1975).

5. The excepted sections have no present relevance.

On its face this is a strong, comprehensive, express statement that ERISA is not to be read as displacing by implication any pre-existing federal legislation. Congress' declaration incorporates and goes beyond the normal canon that repeals by implication are not favored (*see, e. g., Universal Interpretive Shuttle Corp. v. Washington Metropolitan Area Transit Comm'n*, 393 U.S. 186, 193, 89 S.Ct. 354, 358, 21 L.Ed.2d 334 (1968)) to say, more definitively, that they should not in any case be implied.

Tying subsection (d) to other parts of section 514 which automatically preempt state laws, ALPA urges that the only purpose of subsection (d) is to foreclose federal law from being mechanically preempted in the same way as state legislation—that Congress meant to leave it to the courts to decide for themselves, on the basis of a comparison of the policies and purposes of the two pieces of federal legislation, whether ERISA or the other federal statute should prevail. But there is nothing in the legislative history to support that narrow interpretation and it runs counter to the sweeping and very specific language Congress used.[6]

In the light of the plain directive of section 514(d), unsoftened as it is by anything in ERISA's history or background, we cannot balance ERISA against the Railway Labor Act, as ALPA invites us to do, so as to interpret the former "to alter, amend, modify, invalidate, impair, or supersede" the compulsory arbitration provisions of the Labor Act.[7] Nor are we persuaded that the

legislative history of ERISA reveals an affirmative Congressional intention to do away with all compulsory arbitration for pension matters.[8] The most that can be gathered from this aspect of the statute's background is that Congress did not wish to require *all* benefit plans to offer an arbitral remedy, nor did it desire to make it possible for any collective bargaining agreement, no matter in what industry or business, to make arbitration compulsory. There is nothing in this history to show that Congress also wanted to change, repeal, or modify a prior Congressional enactment, like the Railway Labor Act, which expressly made arbitration mandatory in a very few selected businesses. And, as we have pointed out, the terms of section 514(d) provide precisely to the contrary.[9]

### III.

■ Northwest tells us that ALPA's complaint alleges no statutory claim under ERISA independent of ALPA's view of the meaning of the 1975 agreement, and therefore that this whole suit must be dismissed as subject to Railway Labor Act's compulsory arbitration requirement. The District Court apparently agreed. But ALPA insists that it has also asserted an independent claim, separate and apart from its position on the 1975 pension agreement, under the fiduciary provisions of ALPA. On this phase of the case, we hold for ALPA.

A. Although the complaint does allege that Northwest's conduct violated the terms

---

6. Section 514 has the general heading of "Other Laws" and is obviously concerned with both state and federal laws.

7. The First Circuit has made precisely this holding. *de la Rosa Sanchez v. Eastern Airlines, Inc.*, 574 F.2d 29, 33 (1st Cir. 1978).

8. This contention rests on the refusal of Congress as a whole to adopt a proposal of the Senate that all pension benefit plans be required to provide arbitration procedures and that, if the arbitration procedure was provided by collective bargaining agreement and approved by the Secretary of Labor, arbitration was to be compulsory. The bill as passed by the House contained no such requirement. The conference committee rejected the Senate suggestion. Senator Javits, one of the Senate

managers, explained that "house conferees were opposed to the Senate provision on grounds it might be too costly to plans and a stimulant to frivolous benefit disputes and at their insistence it was dropped in conference." 120 Cong.Rec. S29941 (daily ed. Aug. 22, 1974).

9. The recent decision in *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979), has no bearing on the problem now before us. The Supreme Court simply held in that case that the preexisting legislation there involved, the Securities Act and the Securities Exchange Act, did not apply to a noncontributory, compulsory pension plan.

and conditions of the pension plan—and in doing so gave ALPA and the pilots a claim under ERISA[10]—there are, in addition, paragraphs of the complaint which can and should be read as independently charging contravention of the obligatory fiduciary standards of ERISA even if the company's version of the meaning and application of the pension plan is accepted. As we understand the complaint in liberal fashion, paragraphs 17–19, 21–28 aver, above and beyond violation of the plan itself, conflict with ERISA's statutory requirements that a plan's assets shall never inure to the benefit of the employer and shall be held for the exclusive purposes of providing benefit to participants and defraying reasonable expenses (section 403(c)(1), 29 U.S.C. § 1103(c)(1)), that a plan fiduciary shall act to obtain those ends (section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A)), and that in a conflict-of-interest situation a plan fiduciary should not act for his own benefit (section 406(a)(1) and (b), 29 U.S.C. § 1106(a)(1) and (b)). The complaint suggests that these violations of ERISA would come about (regardless of permissibility under the plan itself) if Northwest deliberately and unnecessarily withheld disbursement of the funds due pilots choosing "cash out" (see Part I, *supra*) from August 1975 until November–December 1975, and used these funds (and their proceeds) for the purpose of decreasing or deferring its own contributions to the trust fund.

Contrary to Northwest's submission, we do not consider these allegations so frivolous as to deprive the District Court of the jurisdiction granted it by ERISA. As pleaded, the statutory claim is not "so insubstantial, implausible, foreclosed by prior decisions [of the Supreme Court or this court], or otherwise completely devoid of merit as not to involve a federal controver-

sy within the jurisdiction of the District Court, whatever may be the ultimate resolution of the federal issues on the merits." *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666–67, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974). *See, also, Hagans v. Lavine*, 415 U.S. 528, 536–543, 94 S.Ct. 1372, 1378–82, 39 L.Ed.2d 577 (1974); *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). The claim may fail for lack of proof, or conceivably it may be dismissed because ERISA does not prohibit the conduct now alleged, but those possibilities are not equivalent to a present lack of jurisdiction. *Bell v. Hood, supra*, 327 U.S. at 682, 66 S.Ct. at 776.[11]

■ B. If, as we hold, the complaint states a non-frivolous statutory claim under ERISA which is independent of the correct construction of the pension plan, the District Court had jurisdiction of that statutory claim. Northwest does not contend otherwise. The Railway Labor Act's arbitral provisions do not demand that such pure statutory, noncontractual claims be sent to arbitration; they can go directly to court. *See Conrad v. Delta Air Lines, Inc.*, 494 F.2d 914, 917–18 (7th Cir. 1974); *Ruby v. TACA Int'l Airlines, S. A.*, 439 F.2d 1359, 1364 (5th Cir. 1971). It is doubtful that a Railway Labor Act arbitrator has any authority to consider such independent statutory claims. *See Slocum v. Delaware L. & W. R. R.*, 339 U.S. 239, 244, 70 S.Ct. 577, 579, 94 L.Ed. 795 (1950); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52–54, 94 S.Ct. 1011, 1021–22, 39 L.Ed.2d 147 (1974). In any event, the basic principle of *Alexander v. Gardner-Denver Co.*, applicable here though it directly deals with Title VII of the Civil Rights Act of 1964, is that a federal court expressly endowed by Congress with jurisdiction over certain federal statutory claims retains that jurisdiction even

---

10. Section 502(a), 29 U.S.C. § 1132(a), gives any plan participant or beneficiary a right to bring a civil action to recover benefits under the terms of the plan and to enforce rights under the terms of the plan, as well as to obtain equitable relief to redress violations of the plan or to enforce the provisions of the plan.

11. We do not understand the District Court as having considered the affidavit of Northwest's president, denying any impropriety in handling the trust funds, on the issue of jurisdiction—and in any event the affidavit (which hardly touches on the specific statutory allegations we understand the complaint to make) should not be so considered.

though other aspects of the same transaction, dependent on the meaning and application of a collective bargaining agreement, may have to be decided by compulsory arbitration. 415 U.S. at 49–54, 94 S.Ct. at 1020–22.

## IV.

The results we have reached in Parts II and III, *supra*, mean that the contractual sections of ALPA's case cannot be heard in the District Court but only before the Labor Act's arbitral body, while the independent statutory claims under ERISA are properly before the court. In that situation the appropriate procedure is for the court to suspend its own proceedings until the end of the arbitral process or until it is clear that arbitration cannot be obtained.[12] It is wise to await the completion of the arbitration process because the primary focus of the complaint—though it does present independent statutory claims—is on the alleged violation of the pension plan, and arbitration, if had, may either resolve the entire controversy or at least aid in the solution by the court of the statutory contentions.

If arbitration is had, we leave open for future determination what weight the District Court should give to purely factual findings, if any, made by the arbitration board which may also bear on the independent statutory claims, *e. g.* whether Northwest intentionally or unreasonably delayed in paying out the contributions of the pilots opting for "cash out."

## V.

■ This disposition of ALPA's appeal means that the litigation is not yet ended, and it is therefore premature and inappropriate at this time to consider attorneys' fees and costs under section 502(g) of ERISA, 29 U.S.C. § 1132(g). Without passing on the District Court's order denying Northwest's motion for attorneys' fees and costs, we vacate that order without prejudice to a consideration of the fee problem if

raised by either side at the close of the action.

*Affirmed in part, reversed in part, vacated in part.*

---

12. Northwest says that it is and has been far too late for ALPA to institute arbitration proceedings, but that is a matter to be determined, not in this suit, but in connection with the arbitration process.