**M.A. EVERETT, et al., Plaintiffs,**

v.

**USAIR GROUP, INC., et al., Defendants.**

**Civil Action No. 95–0990.**

United States District Court,
District of Columbia.

May 31, 1996.

Brian W. Shaughnessy, Shaughnessy, Borowski & Gagner, for plaintiffs.

Zachary D. Fasman, Erin M. Sweeney, Paul Hastings Janofsky & Walker, Washington, DC, for defendants.

## *OPINION*

### PAUL L. FRIEDMAN, District Judge.

This action is brought by 481 retired and active USAir pilots against USAir, Inc., USAir Group, Inc., and the Retirement Income Plan for Pilots of USAir, Inc., the pension plan administered by USAir, Inc. Plaintiffs allege that defendants have (1) breached their fiduciary duties under Section 1104 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, (2) failed to pay benefits due under ERISA, 29 U.S.C. §§ 1054(g) and 1132(a)(1)(B), and (3) violated ERISA's disclosure provision, 29 U.S.C. § 1022, and the applicable regulations, 29 C.F.R. §§ 2520.102–2, 102–3, 104b–1. All defendants have moved to dismiss or for summary judgment, and defendant USAir Group also has sought dismissal on the ground that it is not a benefit plan, a plan administrator or a fiduciary under ERISA.

### I. FACTUAL BACKGROUND

Prior to 1972, the pilots of USAir (then known as Allegheny Airlines) had a mixed defined benefit/defined contribution plan ("the Prior Plan"). The plan had a variable component based on the performance value of a group of actual diversified stocks, including reinvested dividends (the "Variable Fund"). Pilots accumulated units in the plan, and the value of each unit was based on the value of this variable fund, i.e., its accumulated assets plus reinvested dividends. Pls.' Opp'n at 1–2; Defs.' Mot. at 6. In 1972, the pilots and USAir (then Allegheny Airlines) negotiated a new collective bargaining agreement ("CBA") and signed a Letter of Agreement changing the method of calculating certain pension benefits, effective December 1, 1972. Letter of Agreement between Allegheny Airlines, Inc. and the Air Line Pilots at 121–33, Def.'s Ex. 2 at FUW5329–35. In 1973, ALPA and Allegheny Airlines amended the pension plan in conformity with the 1972 Letter of Agreement. Amendment to the Retirement Income Plan for Pilots of Allegheny Airlines, Inc. ¶ 4.3(C), Defs.' Ex. 3.

Under the 1972 Letter of Agreement and the 1973 amended plan, participants covered by the Prior Plan were entitled to a "minimum benefit" to maintain the value of their pensions. Defs.' Mot. at 4; Pls.' Opp'n at 1–3. In calculating the minimum benefit, the value of each variable unit was no longer measured in terms of the actual value of the Variable Fund but instead by the performance of the Standard and Poor's 500 Index. A key provision of the amended plan stated that a participant's retirement income under the new plan

> shall not be less than that to which [a participant] would have been entitled at his Retirement ... assuming ... that had the Variable Retirement Income Plan remained in effect, the investment performance thereunder would be equal to the investment performance of the Standard and Poor's 500 stock index (unadjusted for dividends).

Amendment to the Retirement Income Plan for Pilots of Allegheny Airlines, Inc. ¶ 4.3(C), Defs.' Ex. 3.[1] In order to ensure that partic-

---

1. In similar language, the 1972 Letter of Agreement provided:

   (1) The benefit which would have been paid under the Prior Plan is computed based on the pilot's actual earnings. For the variable portion of this benefit the variable unit value for any future year shall be computed as if the variable fund assets had achieved invest-

   ment performance equal to the performance of the Standard and Poor's 500 Index.

   (2) For a pilot at retirement, the greater of the benefits [under the current plan or the Prior Plan] shall be payable.

   Letter of Agreement between Allegheny Airlines, Inc. and the Air Line Pilots § 2(E)(1)–(2) at 124, Def.'s Ex. 2 at FUW5331. The parties agree that

ipants received the same or higher benefits under the amended plan, a phantom value under the Prior Plan was to be calculated and compared with the value under the new plan. Pilots who were covered under the Prior Plan are entitled to benefits calculated by the more favorable method under the two plans. Letter of Agreement between Allegheny Airlines, Inc. and the Air Line Pilots at 124, Def.'s Ex. 2 at FUW5331; *see also* USAir Pilots' Agreement § 28(B)(1)(k) (July 9, 1992), Pls.' Ex. 4, Defs.' Ex. 14.

In 1991, USAir proposed an amendment to the new plan that would have made explicit that dividends would not be included in the calculation of benefits under the 1973 amended plan. The Air Line Pilots Association ("ALPA"), the pilots' union, initially agreed, but several pilots objected and ALPA never signed the agreement letter.

This suit revolves around the interpretation of the 1973 amended plan's language, specifically whether and in what manner dividends are to be included for the purposes of calculating the qualifying pilots' benefits. Plaintiffs argue that in light of the intent of the 1972 CBA and the 1973 amended plan to provide retirement income no less than that to which they would have been entitled under the Prior Plan, dividends should be included in the calculation of investment performance, and that the phrase "unadjusted for dividends" included in the 1973 amendment means that the S & P investment performance shall not be reduced by the amount of dividends that hypothetically would have accumulated. Otherwise, plaintiffs argue, the 1973 amended plan would have resulted in a significant loss to the pilots who had been governed by the Prior Plan and there is no evidence that this was contemplated.[2]

Defendants assert that the plain language of the 1973 amended plan, "unadjusted for dividends," means that the fund is to be evaluated on the basis of the market value of the S & P Price Index and dividends are not to be included. Defendants point to evidence that purportedly shows that they have consistently interpreted the plan this way since 1973, that two independent actuarial firms came to the same conclusion, and that ALPA agrees with this interpretation.

Plaintiffs respond that ALPA's views should carry no weight because ALPA's interests are in conflict with plaintiffs' interests since the inclusion of dividends in the calculation of qualifying pilots' pensions would cost the pension fund millions of dollars and would benefit only retired pilots who are not an active part of ALPA's membership, or those few pilots who are soon to retire and who constitute a very small fraction of ALPA's membership, all at the expense of younger, active ALPA members. Plaintiffs emphasize that the retired pilots, who would be the largest beneficiaries of a favorable ruling for plaintiffs, are not actively represented by ALPA and that although at least one pilot requested that ALPA file a grievance on the pilots' behalf over this dividend issue, ALPA declined to do so. Declaration of Marvin A. Everett ("Everett Decl.") ¶ 2 (March 18, 1996), Pls.' Ex. 34.

Defendants raise a number of arguments in support of their motion to dismiss or for summary judgment based on, *inter alia,* the applicable statutes of limitations for various claims and as to various plaintiffs, the standing of those plaintiffs who received lump sum benefits, the reasonableness of USAir's interpretation of the plan, and the Court's jurisdiction to interpret a collective bargaining agreement in view of the dispute resolution

there is no substantive difference between the meaning of the 1972 Letter of Agreement and the 1992 collective bargaining agreement. USAir Pilots Agreement § 28(B)(1)(k)(2) (July 9, 1992), Pls.' Ex. 4. Plaintiffs also specifically decline to argue that the 1973 plan amendment constituted an impermissible amendment to the CBA. Pls.' Opp'n at 16.

2. Plaintiffs offer the affidavit of Carl Colbath, who was one of the negotiators in 1972, Pls.' Ex. 1, a 1993 letter from Donald Reubert, another negotiator, Pls.' Ex. 20, a 1977 letter from

USAir's then-Treasurer and plan administrator, H.L. Dyer, Pls.' Ex. 28, as well as evidence that purportedly shows that USAir did not definitively decide to exclude dividends from the calculation until 1989. The language of the Summary Plan Descriptions ("SPD") has changed over the years: the 1973 SPD, like the 1973 amended plan but unlike the 1972 Letter of Agreement, said "unadjusted for dividends"; the 1988 SPD did not mention dividends at all; and the 1991 SPD says "exclusive of dividends."

mechanism established by Congress in the Railway Labor Act. Defendants also seek attorneys' fees and costs, and plaintiffs seek further discovery under Rule 56(f), Fed. R.Civ.P. Because the Court finds the jurisdictional issue under the Railway Labor Act to be dispositive, it does not reach the other arguments.[3]

## II. THE RAILWAY LABOR ACT

■ Subchapter II of the Railway Labor Act, 45 U.S.C. §§ 181 *et seq.*, governs disputes between airline carriers and their employees. Section 184 requires each carrier to establish a board of adjustment or system board to decide "disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 184.[4] That statutory grievance procedure is "mandatory, exclusive and comprehensive." *Air Line Pilots Ass'n, Int'l v. Delta Air Lines,* 863 F.2d 87, 88 (D.C.Cir.1988) (quoting *Brotherhood of Locomotive Engineers v. Louisville & N.R.R.,* 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963)), *cert. denied,* 493 U.S. 821, 110 S.Ct. 79, 107 L.Ed.2d 45 (1989); *see Air Line Pilots Ass'n, Int'l v. Northwest Airlines,* 627 F.2d 272, 275 (D.C.Cir.1980). The RLA's mandatory arbitration procedures apply only to issues arising out of the interpretation of the collective bargaining agreement and not to independent statutory claims under ERISA. *Air*

*Line Pilots Ass'n, Int'l v. Delta Air Lines,* 863 F.2d at 91 & n. 2, 93–94; *Air Line Pilots Ass'n, Int'l v. Northwest Airlines,* 627 F.2d at 277. Contractual "doubts about the arbitrability of issues[, however,] should be resolved in favor of coverage." *Air Line Pilots Ass'n, Int'l v. Delta Air Lines,* 863 F.2d at 93 (citing *Northwest Airlines v. Air Line Pilots Ass'n, Int'l,* 808 F.2d 76, 82 (D.C.Cir.1987)). If a dispute is mandatorily arbitrable under the Railway Labor Act, this Court lacks jurisdiction to consider it.

Plaintiffs raise three arguments as to why the Railway Labor Act does not deprive this Court of jurisdiction over some or all of their claims. First, two of plaintiffs' claims are independent claims under ERISA that do not turn on the interpretation of the collective bargaining agreement. Second, most of the plaintiffs (approximately 345 out of 481) are retired and the Railway Labor Act does not govern retired pilots. Third, since the Retirement Board is made up of an equal number of USAir representatives and ALPA representatives, and because ALPA has stated that it does not represent the retired pilots in this matter, has refused to file a grievance on plaintiffs' behalf and has announced its agreement with USAir's interpretation of the CBA, it would be futile to arbitrate the dispute and plaintiffs therefore are not required to do so.

### A. Independent ERISA Claims

As a general matter, the parties agree that the pilots' retirement benefits are governed

---

**3.** USAir Group, Inc. has moved separately to dismiss or for summary judgment, arguing that, although it is USAir's parent company, it lacks control over the pension plan and thus does not qualify as a plan, a plan administrator or a fiduciary under ERISA. 29 U.S.C. § 1002(21)(A); *see* Declaration of Michelle Bryan ¶ 2 (Attorney for USAir) ("USAir Group, Inc. has no relationship to the Plaintiffs or to the Retirement Income Plan. . . .").

While the fact that USAir and USAir Group share their management and board alone does not demonstrate that USAir Group has discretionary control over the pension plan, *see Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323, 1325 (9th Cir.1985); *Leigh v. Engle,* 727 F.2d 113, 133–35 (7th Cir.1984), discovery in this case has been limited by Court Order and it therefore is premature to determine whether USAir Group in fact ever exerted control over the management of the plan. As the Court concludes that the central

issues in this case are mandatorily arbitrable under the Railway Labor Act, it will not rule on USAir Group's motion to dismiss at this time.

**4.** The pilots' retirement plan provides for the creation of a Retirement Board to hear "all disputes arising out of the application and interpretation of the Plan." Retirement Income Plan for Pilots of USAir, Inc. (effective Jan. 1, 1994) § 14.3, Defs.' Ex. 13; Letter of Agreement # 12 §§ 1.1, 3.1, Defs.' Ex. 14; *see also* Amendment to the Retirement Income Plan for Pilots of Allegheny Airlines, Inc. (effective Dec. 1, 1972) § 9.1(d), Defs.' Ex. 3. The Retirement Board consists of two members selected by USAir and two members selected by ALPA. Any participant of the plan may submit to the Retirement Board any dispute concerning his or her participation in or benefits under the plan.

by the 1972 collective bargaining agreement and plaintiffs do not assert that the pension plan is, by its terms, exempt from the RLA's mandatory arbitration provisions. *See Air Line Pilots Ass'n, Int'l v. Delta Air Lines,* 863 F.2d at 92–93; *cf. Bonin v. American Airlines,* 621 F.2d 635, 639 (5th Cir.1980). Plaintiffs nevertheless contend that two of their three claims under ERISA are sufficiently independent from any interpretation of the collective bargaining agreement to provide this Court with jurisdiction.

■ Plaintiffs assert three separate claims: failure to pay benefits due under ERISA, breach of fiduciary duty under ERISA, and violation of ERISA's disclosure provisions. Plaintiffs' central contention is that USAir purposely misinterpreted the collective bargaining agreement and, thus, the pension plan to exclude dividends from the calculation of plan benefits. In the Court's view, this is precisely the sort of interpretive issue encompassed by the RLA's mandatory arbitration provisions. *See Air Line Pilots Ass'n, Int'l v. Northwest Airlines,* 627 F.2d at 274–75. Plaintiffs' claim for benefits arises directly out of this interpretive question and the Court therefore lacks jurisdiction over it.

Plaintiffs' other two claims present a more complex picture. The court of appeals for this Circuit has held that an independent ERISA claim may arise out of the same facts as an arbitrable claim and that a district court has jurisdiction over that sort of separate statutory claim if it is genuinely independent of the correct construction of the collective bargaining agreement. *Air Line Pilots Ass'n, Int'l v. Northwest Airlines,* 627 F.2d at 277–78. In the *Northwest* case, ALPA alleged that Northwest unreasonably delayed payments due under the collectively bargained pension plan, thus accumulating interest to itself and thereby violating the terms of the plan as well as Northwest's fiduciary duty under ERISA to act only for the benefit of plan participants. The court held that ALPA's fiduciary duty claim was an independent, nonarbitrable claim because even if Northwest's conduct was permissible under the proper interpretation and application of the plan, it still might have constitut-

ed a breach of Northwest's fiduciary duties under ERISA. *Id.* at 277.

■ By contrast, plaintiffs in this case have failed to articulate any claims for breach of fiduciary duty that are sufficiently independent of the central arbitrable contract interpretation issue to provide this Court with jurisdiction. Plaintiffs contend that defendants breached their fiduciary duties by improperly calculating plan benefits and by denying plaintiffs benefits to which plaintiffs are entitled. *See* Complaint ¶¶ 30, 36–41. Each of these claims, however, turns on whether USAir's interpretation of the plan is incorrect or misleading. If USAir's interpretation is correct, plaintiffs' claims for breach of fiduciary duty necessarily will fail. Conversely, if plaintiffs' interpretation is correct, plaintiffs then will be able to maintain an action for breach of fiduciary duty. *Air Line Pilots Ass'n, Int'l v. Delta Air Lines,* 863 F.2d at 96. In either case, the proper interpretation of the collective bargaining agreement and pension plan must be decided first, and that issue is within the exclusive jurisdiction of the Retirement Board.

The Court concludes, however, that plaintiffs have stated an independent claim under 29 U.S.C. § 1022 for violation of ERISA's disclosure provisions. Section 1022 requires that a Summary Plan Description ("SPD") be provided to all plan participants. Such an SPD

> shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant....

29 U.S.C. § 1022(a)(1). Section 1022 further requires that the SPD shall contain, *inter alia,* "a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits;

[and] the source of financing for the plan...." 29 U.S.C. § 1022(b); *see also* 29 C.F.R. §§ 2520.102–2, 102–3, 104b–1.

Even if USAir's interpretation of the CBA and the plan is correct, USAir had an independent duty to provide an SPD that was "calculated to be understood by the average plan participant" and that would "reasonably apprise such a participant" that dividends were not to be included in the benefits calculation. Plaintiffs argue that USAir misled plan participants with the information that it provided and the examples of benefits that it used, that pilots relied on those representations, and that some pilots might have made different retirement decisions had they known that their retirement income would not reflect reinvested dividends. *See* Complaint ¶¶ 27, 34–35, 53. In fact, plaintiffs have produced evidence suggesting that some pilots may not have been aware that USAir was calculating benefits on a no-dividend-reinvestment basis. *See* Letter from Carl Colbath to Terry Dickinson (April 5, 1994), Pls.' Ex. 1; Letter from J. Joseph Rahll to Captain Owen Brown (Jan. 24, 1994), Pls.' Ex. 7; Letter from Donald Reubert to Captain Peter Gauthier (Oct. 9, 1993), Pls.' Ex. 20; *see also* Letter from Deloitte & Touche to ALPA (June 1, 1993), Pls.' Ex. 21 ("The only area of concern which may deserve some attention is the lack of definition in the 1992 proposed working agreement as to whether or not the Standard & Poor's index is to include dividends."). In light of this controversy, the three words in the 1973 SPD that would have constituted notice of the basis of USAir's calculation—"unadjusted for dividends"—might or might not suffice as a matter of law under ERISA to fulfill USAir's duty to disclose.

■ Moreover, the three crucial words changed over the years: the 1973 SPD, like the 1972 CBA, used the phrase "unadjusted for dividends"; the 1988 SPD did not mention dividends at all; and the 1991 SPD used the phrase "exclusive of dividends." Defs.' Ex. 1 at FUF0607; Defs.' Ex. 32 at FUF0243; Defs.' Ex. 33 at FUF0202. Accordingly, the Court finds that plaintiffs have stated an independent claim for the violation of ERISA's disclosure provisions over which the Court has jurisdiction. This Court will stay its own proceedings, however, until the end of the arbitral process. *See Air Line Pilots Ass'n Int'l v. Northwest Airlines*, 627 F.2d at 278.

## B. RLA Coverage of Retired Employees

Plaintiffs argue that even if two of their claims normally would be within the exclusive jurisdiction of the Retirement Board, this Court has jurisdiction over all the claims in this case, at least as to a majority of the plaintiffs, because retired pilots are not "employees" under the RLA. Plaintiffs rely on *Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass*, 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971), in which the Supreme Court held that retired workers are not "employees" under the National Labor Relations Act's collective bargaining provisions. Plaintiffs' attempted analogy between coverage under the NLRA and under the RLA fails, however, because the Supreme Court has squarely held that the RLA's mandatory arbitration provisions do apply to retired workers. *Pennsylvania R.R. v. Day*, 360 U.S. 548, 551–52, 79 S.Ct. 1322, 1324–25, 3 L.Ed.2d 1422 (1959). While *Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass* is a more recent decision, the Supreme Court gave no indication there or in any other opinion that it intended to overrule *Pennsylvania R.R. v. Day.*

■ The Court in *Pennsylvania R.R. v. Day* was very clear in its reasoning with respect to retired workers. It wrote:

All the considerations which led Congress to entrust an expert administrative board with the interpretation of collective bargaining agreements are equally applicable when, as here, the employee has retired from service after initiating a claim for compensation from for work performed while on active duty.... The same collective bargaining agreement must be construed with the same need for uniformity of interpretation and orderly adjustment of differences.... The purpose of the Act is fulfilled if the claim itself arises out of the employment relationship which Congress regulated.

*Pennsylvania R.R. v. Day,* 360 U.S. at 551–52, 79 S.Ct. at 1324–25. *See also Beard v. Carrollton R.R.,* 893 F.2d 117, 122 (6th Cir. 1989) (applying the RLA's mandatory arbitration provisions to retired employee who left employment before filing suit so long as claim arose out of employment relationship); *Leu v. Norfolk & Western R.R. Co.,* 820 F.2d 825, 831 n. 10 (7th Cir.1987) (same). Since plaintiffs' claims, including those of the retired pilots, all arise out of their employment relationship with USAir, the RLA governs and the Court lacks jurisdiction.

## C. Futility

Finally, plaintiffs argue that grieving their claims before the Retirement Board would be futile because it is in the interest of ALPA's active members to agree with USAir over the interpretation of the plan rather than with the retired pilots, who are not part of the collective bargaining unit, in order to keep millions of additional dollars available for the active pilots' ultimate retirement. Because the Retirement Board is comprised of two ALPA members and two USAir members, with ALPA and USAir in agreement about the meaning of the CBA, plaintiffs maintain that they cannot succeed before the Board. Defendants concede that plaintiffs will almost certainly lose before the Retirement Board, but argue that this is not the sort of futility contemplated by the Supreme Court in the limited exception it recognized in *Glover v. St. Louis R.R.,* 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), the case on which plaintiffs principally rely. The Supreme Court in *Glover* excused African–American employees from the requirement that they arbitrate their grievances against both their union and their employer because of demonstrated racial hostility on the part of the union and management alike.

Although plaintiffs argue that the futility exception gives this Court jurisdiction over their otherwise arbitrable claims, the Supreme Court in *Glover,* distinguishing analytically between the exhaustion requirement and the mandatory arbitration requirement, noted that futility may be a defense to exhaustion but not to mandatory arbitration which is a jurisdictional matter. *Glover v. St. Louis R.R.,* 393 U.S. at 329–30, 89 S.Ct. at 551–52. *See also Andrews v. Louisville & Nashville R.R. Co.,* 406 U.S. 320, 325, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972) ("[I]n at least some situations the [Railway Labor] Act makes the federal administrative remedy exclusive, rather than merely requiring exhaustion of remedies in one forum before resorting to another."). In light of this distinction, even a showing of genuine futility might not save plaintiffs' claims.

Plaintiffs point out that in cases involving duty of fair representation ("DFR") claims by union members against their unions, the National Railroad Adjustment Board lacks jurisdiction and exhaustion is not required. *See Czosek v. O'Mara,* 397 U.S. 25, 28, 90 S.Ct. 770, 773, 25 L.Ed.2d 21 (1970) ("It is beyond cavil that a suit against the union for breach of its duty of fair representation is not within the jurisdiction of the National Railroad Adjustment Board or subject to the ordinary rule that administrative remedies should be exhausted before resort to the courts."); *Glover v. St. Louis R.R.,* 393 U.S. at 328–29, 89 S.Ct. at 550–51 ("[J]urisdiction of federal courts [is] clear ... [where] the suit [is] one brought by the employees against their own union ..." and "the exhaustion requirement is subject to a number of exceptions.").[5] The rationale is that individual employees cannot expect a fair hearing from adjustment boards where the employees' putative representative, the union, is itself the offending party. *See Richins v. Southern Pacific Co.,* 620 F.2d 761, 763 (10th Cir.1980), *cert. denied,* 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 838 (1981). In limited instances, the bringing of a DFR claim will permit related claims against employers that would normally be arbitrated to come under the district court's jurisdiction. *Glover v. St. Louis R.R.,* 393 U.S. at 329, 89 S.Ct. at 551.[6]

**5.** *See also Sisco v. Consolidated Rail Corp.,* 732 F.2d 1188, 1190–91 (3d Cir.1984); *Richins v. Southern Pacific Co.,* 620 F.2d 761, 762 (10th Cir.1980), *cert. denied,* 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 838 (1981); *Schum v. South*

*Buffalo R.R.,* 496 F.2d 328, 330 (2d Cir.1974); *Porter v. Atchison, Topeka and Santa Fe R.R. Co.,* 768 F.Supp. 571, 575 (N.D.Tex.1991).

**6.** The case law admittedly reflects some debate over the extent of *Glover's* futility exception as

Plaintiffs assert that this rationale should govern the instant case.

This, however, is not a DFR case, nor have plaintiffs established that the facts of this case raise the same conflict of interest and representation issues as in a DFR case or even a hybrid DFR-contractual case.[7] Plaintiffs have chosen not to pursue a DFR claim against ALPA, and ALPA is not even a party to this case. Plaintiffs cannot invoke the jurisdiction of this Court based on a hypothetical unpursued claim where the limits on federal court jurisdiction under the RLA are so clear.

■ Moreover, there is a crucial legal difference between the type of bias alleged by plaintiffs and the institutional alignments and structural biases that drove the *Glover* and *Czosek* decisions. Plaintiffs argue that because the majority of plaintiffs are retired and not part of ALPA they are "structural minorities," akin to the African Americans in *Glover* and the furloughed workers in *Czosek*, who cannot expect a fair hearing before the Retirement Board. But to accept this reading of *Glover* would be effectively to ignore the Supreme Court's holding in *Pennsylvania R.R. v. Day*, 360 U.S. at 551–52, 79 S.Ct. at 1324–25, that retired workers must proceed before the National Railroad Adjustment Board set up under the RLA. That tribunal, like the Retirement Board here, also consists of union-appointed and carrier-appointed officials. 45 U.S.C. § 153(a). Accordingly, the Court is compelled to reject plaintiffs' futility argument and find that it lacks subject matter jurisdiction over plaintiffs' claims for denial of benefits and for breach of fiduciary duty.

In light of defendants' concession that plaintiffs are highly unlikely to prevail before the Retirement Board, the Court recognizes that this result seems particularly harsh. The Court reads *Pennsylvania R.R. v. Day*, however, to require precisely this outcome. The Supreme Court has determined that retired workers, despite their noninclusion in the collective bargaining unit, must proceed before adjustment boards comprised of union and management representatives. Were this Court to hold that these plaintiffs are structurally disadvantaged because they disagree with the position of the union that once represented them and therefore are entitled to the protection of *Glover*, all retired workers challenging their union's bargaining position could proceed directly to court, exempt from the RLA's dictates, and *Pennsylvania R.R. v. Day* would be a dead letter.

An Order consistent with this Opinion shall be entered this same day.[8]

SO ORDERED.

### ORDER

For the reasons stated in the accompanying Opinion issued this same day, it is hereby

ORDERED that Defendants' Motion to Dismiss or for Summary Judgment is GRANTED in part and DENIED in part. Count I and Count III of the Complaint are dismissed for lack of subject matter jurisdiction. Rule 12(b)(1), Fed.R.Civ.P. The Court

---

7. Plaintiffs assert, for example, that one pilot filed a grievance that has been ignored, Grievance letter of Captain Dickinson (May 3, 1994), Pls.' Ex. 34, and that plaintiffs asked ALPA to grieve the issue and ALPA refused, noting that ALPA does not represent retired pilots. Everett Decl. ¶ 2. Since plaintiffs are entitled to grieve the issue individually, however, ALPA's refusal to grieve the issue does not excuse plaintiffs' failure to do so.

8. Because the case is stayed pending arbitration, it is premature to consider attorneys' fees and costs. *Air Line Pilots Ass'n, Inc. v. Northwest Airlines*, 627 F.2d at 278.

applied to contractual disputes between employers and employees where those disputes are related to and arise in connection with DFR claims brought by union members against their union. The Tenth Circuit, for example, has held that district courts have jurisdiction over hybrid DFR-contractual claims even where they encompass potentially arbitrable issues, *Richins v. Southern Pacific Co.*, 620 F.2d at 763, while the Third Circuit has stated that "[w]e believe that *Glover* is not applicable when the basis of the claim is primarily construction and interpretation of existing collective bargaining agreements." *Goclowski v. Penn Central Transportation Co.*, 571 F.2d 747, 756 n. 13 (3d Cir.1978). In this case, however, plaintiffs have not filed a DFR claim against ALPA and thus this is not a hybrid case which, in the Tenth Circuit's view, would imbue the Court with jurisdiction.

finds that it has jurisdiction over Count II of the Complaint for violation of the disclosure provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1022, and implementing regulations. The Court will stay its own proceedings until the end of the arbitration process. *Air Line Pilots Ass'n, Int'l v. Northwest Airlines*, 627 F.2d 272, 278 (D.C.Cir.1980).

SO ORDERED.