# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 07-1611

_____

| | | |
|---|---|---|
| Neil Hastings; Jennifer Karpiuk, individually and on behalf of all others similarly situated, | * * * * | |
| Appellants, | * * | |
| v. | * * * | Appeal from the United States District Court for the District of Minnesota. |
| Gary L. Wilson; John H. Dasburg; Steve Wilson; Douglas Steenland; Richard H. Anderson; Terri L. Keimig; Timothy J. Meginnes; Daniel Matthews; Michael Becker; Robert Brodin; Mickey P. Foret; Hiram Cox; Thomas Momchilov; James G. Mathews; Bernard L. Han; Steve Miller; Tom Goebel; Bill Johnston; Len Willey; Rick Woolley; Jim MacKenzie; Unknown Fiduciaries 1-100, | * * * * * * * * * * * * * * | |
| Appellees. | * | |

_____

Submitted: November 14, 2007
Filed: February 22, 2008 **(Corrected 3/7/08)**

_____

Before MURPHY, HANSEN and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Neil Hastings and Jennifer Karpiuk were employees of Northwest Airlines, Inc. ("NWA"). They brought a class action lawsuit against alleged fiduciaries of two separate NWA pension plans claiming the defendants breached their fiduciary duties under §§ 409 and 502(a)(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109, 1132(a)(2). The district court[1] dismissed the action with respect to one of the pension plans, concluding that the Railway Labor Act's ("RLA") mandatory arbitration provision, 45 U.S.C. § 184, divested federal courts of subject matter jurisdiction. The district court also dismissed the action with respect to the second pension plan for lack of standing because Hastings and Karpiuk were not participants, beneficiaries or fiduciaries of that plan. We affirm.

## I.  BACKGROUND

In 1993, NWA and the International Association of the Machinists and Aerospace Workers ("IAM") entered into a collective bargaining agreement ("IAM Equity Agreement"). Under the IAM Equity Agreement, NWA employees who were IAM union members received shares of NWA Series C Voting Convertible Exchangeable Preferred Stock in consideration for wage concessions. Three other NWA employee groups reached similar agreements: the Air Lines Pilots' Association International ("ALPA"), the International Brotherhood of Teamsters, and NWA management. NWA placed the preferred stock into the Northwest Airlines Corporation Employee Stock Plan ("Employee Plan"), a new profit-sharing plan. The Employee Plan was divided into separate trust accounts for each of the four employee groups.

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

As part of and simultaneous with the IAM Equity Agreement, NWA and IAM entered into a trust agreement ("IAM Trust Agreement"). The IAM Trust Agreement established the rules governing IAM's separate trust in the Employee Plan, including the powers and duties assigned to the IAM trustees. The IAM trustees are the named fiduciaries who have the "authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). Both the IAM Equity Agreement and the IAM Trust Agreement allowed the IAM to appoint and remove trustees; however, such actions required NWA's concurrence.

In 2002, the Employee Plan was terminated. IAM and NWA entered into a merger agreement, pursuant to which the preferred stock was transferred from the Employee Plan to a NWA-sponsored 401(k) Retirement Savings Plan for Contract Employees ("IAM Plan"). The IAM Trust Agreement continued to apply, and the IAM trustees retained their authority over the NWA preferred stock held in the IAM Plan.

The ALPA had a similar arrangement. Their preferred stock was transferred to a NWA-sponsored 401(k) Retirement Savings Plan for Pilot Employees ("Pilot Plan"). A Retirement Board consisting of two members selected by NWA and two members selected by the ALPA served as trustees of the Pilot Plan.

According to the collective bargaining agreements, the NWA preferred stock could not be sold on the open market. Rather, it had an exercisable put option. This option required NWA to buy the preferred stock back at a fixed price of $46.96 per share if the trustees exercised the put after June 1, 2003 and before August 2, 2003. The IAM trustees timely exercised the put option, but NWA did not redeem the shares. The trustees then obtained a court order requiring NWA to honor its agreement. However, the IAM trustees accepted NWA common stock, in lieu of cash, for the repurchase of the preferred stock. Hastings and Karpiuk assert that the Pilot Plan also obtained NWA common stock through similar circumstances.

From January 1, 2001, to June 20, 2005, NWA suffered operating losses of $3.6 billion and its debt increased by $5 billion. During this period, several NWA executives, who Hastings and Karpiuk allege are fiduciaries to the pension plans, sold their personal shares of NWA common stock. Nonetheless, the IAM Plan and the Pilot Plan retained their shares of NWA common stock as the price of the stock fell. On September 14, 2005, NWA filed for bankruptcy.

Hastings and Karpiuk were IAM members employed by NWA and were participants in the IAM Plan. On April 28, 2006, Hastings and Karpiuk commenced this class action lawsuit against certain NWA executives ("NWA Defendants"), alleging that they were fiduciaries of both the IAM Plan and the Pilot Plan, and the Pilot Plan Retirement Board ("Pilot Defendants") as fiduciaries of the Pilot Plan. Although the NWA Defendants were not trustees of the IAM Plan, Hastings and Karpiuk assert that they are fiduciaries because they have the authority under the collective bargaining agreements to reject IAM's appointment or removal of trustees. Hastings and Karpiuk claim that the NWA Defendants and the Pilot Defendants breached their fiduciary duty under ERISA, 29 U.S.C. §§ 1109, 1132(a)(2). Specifically, Hastings and Karpiuk allege that (1) the defendants failed to prudently and loyally manage the IAM Plan's and Pilot Plan's assets; (2) the NWA Defendants failed to adequately monitor the IAM trustees and the Pilot Defendants by not ensuring that they had accurate information regarding NWA's deteriorating business prospects; and (3) certain NWA Defendants breached their duty to avoid conflicts of interest because they failed to ensure that the IAM Plan and the Pilot Plan divested their holdings of NWA common stock when it appeared imprudent to continue holding it, thus ensuring that their personal NWA common stock holdings could be sold at a higher price.

The defendants filed motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). With respect to the IAM Plan, the district court dismissed the case against the NWA Defendants because the RLA's mandatory

arbitration provision, 45 U.S.C. § 184, divested the district court of subject matter jurisdiction.[2] With respect to the Pilot Plan, the district court dismissed the case against the Pilot Defendants and the NWA Defendants, holding that Hastings and Karpiuk did not have statutory standing under ERISA, 29 U.S.C. §§ 1132(a)(2), (e)(1), because neither was a participant, beneficiary or fiduciary of the Pilot Plan. Hastings and Karpiuk appeal.

## II.    DISCUSSION

"We review de novo the grant of a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and the grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 347 (8th Cir. 2007) (internal citations omitted). We must accept all factual allegations in the pleadings as true and view them in the light most favorable to the nonmoving party. *Kohl v. Casson*, 5 F.3d 1141, 1148 (8th Cir. 1993) (stating the standard of review regarding an appeal from the grant of a Rule 12(b)(6) motion); *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (finding that "the non-moving party receives the same protections [for facial attacks under 12(b)(1)] as it would defending against a motion brought under Rule 12(b)(6)").

### A.    The IAM Plan

Congress expanded the RLA to the airline industry to promote stability in labor-management relations between carriers by air and their employees. 45 U.S.C. §§

---

[2]Although the district court stated that the RLA preempted the ERISA claims, "[p]reemption is not the applicable doctrine under these circumstances, since the question whether one federal law takes precedence over another does not implicate the Supremacy Clause." *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 583 (7th Cir. 1999). The district court no doubt meant that the RLA applied in this case and divested the federal courts of subject matter jurisdiction.

151a, 181, 184; *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). To accomplish this goal, the RLA requires parties to arbitrate all "minor disputes" before an adjustment board, which Congress authorized to settle labor-management disputes regarding collective bargaining agreements in the airline industry. *Hawaiian Airlines,* 512 U.S. at 252; *see* 45 U.S.C. § 185; *Jenisio v. Ozark Airlines Inc. Ret. Plan for Agent & Clerical Employees*, 187 F.3d 970, 972-73 (8th Cir. 1999). Minor disputes involve "disputes . . . growing out of . . . the interpretation or application of [collective bargaining] agreements concerning rates of pay, rules, or working conditions." *Jenisio*, 187 F.3d at 972-73 (quoting 45 U.S.C. § 184). "[T]here is a presumption that disputes are minor and thus arbitrable." *Id.* at 973. "The [adjustment] [b]oard has mandatory, exclusive, and comprehensive jurisdiction over minor disputes . . . ." *Id.* (citing *Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R.*, 373 U.S. 33, 39 (1963)).

Hastings and Karpiuk assert that Congress did not intend the RLA's mandatory arbitration scheme to apply to ERISA claims. However, this court has held that the RLA's arbitration requirement applies to ERISA claims if the pension plan is (1) itself a collective bargaining agreement or (2) maintained pursuant to a collective bargaining agreement. *Id.* Hastings and Karpiuk do not dispute that the IAM Equity Agreement, the IAM Trust Agreement and the merger agreement constitute collective bargaining agreements and that the IAM Plan was maintained pursuant to them. Therefore, the RLA's arbitration requirement can apply to these ERISA claims.

Hastings and Karpiuk next argue that their ERISA breach of fiduciary duty claims are not minor disputes because they do not concern rates of pay, rules, or working conditions. *See id.* at 972-73 (holding that "disputes . . . growing out of . . . the interpretation or application of agreements concerning rates of pay, rules, or working conditions" constitute minor disputes within the exclusive jurisdiction of the RLA's arbitration board). Here, the IAM Equity Agreement and the IAM Trust Agreement concerned the rate of pay between NWA and IAM members because

NWA preferred stock was provided to IAM members as consideration for wage concessions. Therefore, any interpretation or application of the IAM Equity Agreement or the IAM Trust Agreement constitutes a minor dispute within the exclusive jurisdiction of the RLA adjustment board.

Hastings and Karpiuk contend that the determination of a breach of fiduciary duty in this case is independent of an interpretation or application of the collective bargaining agreements. The district court, rather than the RLA arbitration board, has jurisdiction over ERISA claims that are independent of an interpretation or application of any collective bargaining agreements, even if the pension plan is created or maintained pursuant to a collective bargaining agreement. *See Air Line Pilots Ass'n, Int'l v. Northwest Airlines, Inc.*, 627 F.2d 272, 277 (D.C. Cir. 1980). In *Air Line Pilots*, NWA collected interest accumulated as a result of its unreasonable delay in payments due under a pension plan. *Id.* at 274. In rejecting NWA's efforts to compel RLA arbitration, the court held that ALPA's breach of fiduciary duty claim was independent of the collective bargaining agreement because even if NWA's conduct in keeping the interest was permissible under a proper interpretation of the plan, NWA's failure to act solely for the benefit of the plan participants could still constitute a breach of fiduciary duties under ERISA. *Id.* at 277. However, in *Everett v. USAir Group, Inc.*, 927 F.Supp. 478 (D.D.C. 1996), *aff'd*, 194 F.3d 173 (D.C. Cir. 1999), the district court determined that it lacked subject matter jurisdiction due to the RLA because the breach of fiduciary duty claim was not independent of a collective bargaining agreement. *Id.* at 483. There, the collective bargaining agreement included the method for calculating pension benefits. *Id.* at 480. To determine whether USAir wrongfully excluded dividends from its calculation of plan benefits required first the proper interpretation of the benefit calculation method described in the collective bargaining agreement. *Id.* at 483. Therefore, the court held that the breach of fiduciary duty claim was not independent of the collective bargaining agreement because determining if USAir improperly calculated plan benefits "turn[ed] on whether USAir's interpretation of the plan [was] incorrect or misleading." *Id.*

As in *Everett*, Hastings's and Karpiuk's breach of fiduciary duty claims are not independent of the collective bargaining agreements. The NWA Defendants deny that they are fiduciaries of the IAM Plan. The NWA Defendants are not trustees of the IAM Plan. However, because the IAM Equity Agreement and the IAM Trust Agreement require NWA's concurrence whenever the IAM appoints or removes trustees, Hastings and Karpiuk argue that NWA effectively has the power to appoint and remove trustees and, therefore, is a fiduciary of the IAM Plan. *See Hickman v. Tosco Corp.*, 840 F.2d 564, 566 (8th Cir. 1988) (holding that the power to appoint trustees makes one a fiduciary under ERISA). By their own assertions, the determination of NWA's power to appoint and remove a trustee requires an interpretation and application of the collective bargaining agreements. Thus, the determination of whether or not the NWA Defendants owe fiduciary duties to IAM Plan participants is not independent of an interpretation or application of the collective bargaining agreements. Because the breach of fiduciary duty claims involving the IAM Plan require an interpretation and application of the collective bargaining agreements, they constitute minor disputes within the exclusive jurisdiction of the RLA adjustment board. *See Jenisio*, 187 F.3d at 973.

Finally, Hastings and Karpiuk claim that the NWA Defendants are estopped from asserting that the RLA arbitration board has jurisdiction because NWA distributed pamphlets indicating that IAM Plan participants may file suit in federal court. However, "parties to a [collective bargaining agreement] may not circumvent the RLA's arbitration requirement (and thereby vest subject matter jurisdiction in the district court) by contractual agreement." *Jenisio*, 187 F.3d at 974; *accord Bowe v. Northwest Airlines, Inc.*, 974 F.2d 101, 103-104 (8th Cir. 1992) ("Parties to an agreement cannot create federal subject matter jurisdiction by consent."). Therefore, the district court correctly concluded that it lacked subject matter jurisdiction over the claims that the NWA Defendants breached fiduciary duties owed to IAM Plan participants.

## B.     The Pilot Plan

"To bring a civil action under ERISA, a plaintiff must have . . . statutory standing." *Leuthner v. Blue Cross & Blue Shield of Northeastern Pa.*, 454 F.3d 120, 125 (3d Cir. 2006); *accord Adamson v. Armco, Inc.*, 44 F.3d 650, 655 (8th Cir. 1995) (holding that plaintiffs lacked statutory standing).  To have statutory standing under ERISA for a breach of fiduciary duty claim, a plaintiff must be "a participant, beneficiary or fiduciary" of the ERISA plan.  29 U.S.C. § 1132(a)(2).  Hastings and Karpiuk, as IAM members, have not alleged that they were participants, beneficiaries or fiduciaries of the Pilot Plan.  Therefore, Hastings and Karpiuk lack standing over their claims that the NWA Defendants and the Pilot Defendants breached their fiduciary duties to Pilot Plan participants and beneficiaries.

Nonetheless, Hastings and Karpiuk argue that they have standing by virtue of having brought a class action pursuant to Federal Rule of Civil Procedure 23 because "an individual in one ERISA benefit plan can represent a class of participants in numerous [ERISA benefit] plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998); *accord Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1105-06 (5th Cir. 1993).  Our circuit has not adopted this rule, and we need not decide whether to adopt such a rule at this time.  Because the district court does not have subject matter jurisdiction over the breach of fiduciary duty claims involving the IAM Plan, Hastings and Karpiuk cannot rely on those claims to establish standing for similar causes of action brought on behalf of the Pilot Plan participants and beneficiaries.  As a result, Hastings and Karpiuk must have standing to pursue their breach of fiduciary duty claims involving the Pilot Plan and cannot rely on *Fallick* and *Forbush* to obtain such standing.  *See Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1196 (8th Cir. 1998) (holding that an individual who lacks standing to pursue a claim under one ERISA benefit plan cannot obtain standing over that same plan through a class action lawsuit).  Because Hastings and Karpiuk were not

participants, beneficiaries or fiduciaries of the Pilot Plan, the district court correctly held that Hastings and Karpiuk lacked standing to bring claims on behalf of the Pilot Plan participants and beneficiaries.

## III.  CONCLUSION

Because we conclude that the district court did not err in granting the motions to dismiss, we affirm.[3]

_____

[3]We also deny the Pilot Defendants' pending motion to strike or, in the alternative, to respond to certain matters contained in Hastings's and Karpiuk's reply brief.